2007 ME 124

**STATE of Maine**

v.

**Terrence E. WINSLOW.**

Supreme Judicial Court of Maine.

Submitted on Briefs: July 19, 2007.
Decided: Aug. 30, 2007.

Geoffrey A. Rushlau, District Attorney, Christopher R. Fernald, Assistant Dist. Atty., Rockland, for the State.

William Maddox, Esq., Rockland, for the defendant.

Panel: SAUFLEY, C.J., and ALEXANDER, CALKINS, LEVY, SILVER and MEAD, JJ.

CALKINS, J.

[¶ 1] Terrence E. Winslow appeals from a conviction entered in Superior Court (Knox County, *Marden, J.*) for OUI (Class D), 29–A M.R.S. § 2411(1–A)(A) (2006), following a jury trial. Winslow argues that his conviction should be vacated because of prosecutorial misconduct. He also appeals his sentence contending that the court violated his right to a jury trial when it imposed a jail sentence, which had the effect of punishing him for demanding a jury trial.[1] We affirm the judgment.

## I. BACKGROUND

[¶ 2] Winslow was operating a motor vehicle on the night of September 4, 2004 in Rockland. Officer Smith of the Rockland Police Department observed Winslow's vehicle moving down the center of the road and going over the double yellow line. Smith and his assisting officer, Waterman, approached the vehicle and saw that a rear light was not lit. As Smith spoke to Winslow, he noticed the odor of intoxicating liquor and saw that he had bloodshot and glassy eyes. Winslow appeared to be "slightly unsteady." He denied that he had had anything to drink.

[¶ 3] Smith administered several sobriety tests on which Winslow's performance was "poor." Smith also performed the horizontal gaze nystagmus (HGN) test, from which Smith concluded that Winslow was under the influence of a depressant. Smith also shined a light into Winslow's nose and observed a chunk of white powder in the left nostril. Winslow denied using any prescription medications. Officer Finnegan, who had come to the scene, asked Winslow "what he had been snorting," and Winslow said that he had been snorting Vicodin.

[¶ 4] The officers arrested Winslow for OUI. At the police station, Winslow was instructed to provide a urine specimen, which he did and which was sent to the chemist for testing. Waterman administered a breathalyzer test, which gave a result of a blood-alcohol level of .04%. At the jail Smith administered additional sobriety tests. The tests and Winslow's performance on them were described in detail to the jury. Essentially, Winslow performed poorly on all of them. The HGN test was administered again, and Winslow continued to show signs consistent with someone who had taken a narcotic.

[¶ 5] A complaint was issued against Winslow charging him with OUI.[2] The complaint included the following statement: *"No Jail Requested."* Winslow pleaded not guilty in the District Court (*Westcott, A.R.J.*), and he made a timely demand for a jury trial pursuant to M.R.Crim. P. 22. Thereafter, Winslow requested that counsel be appointed for him, and the request was granted.

[¶ 6] Prior to trial, Winslow made an oral motion in limine to exclude evidence, which the court granted. The court ordered the State not to bring up the arrest of Winslow's two passengers, who were arrested on probation violations at about the same time that Winslow was arrested for OUI, and the court instructed the State

---

1. We do not discuss Winslow's contention that the evidence was insufficient to convict him of OUI. As can be seen from the recitation of the facts, the evidence was sufficient.

2. Title 29–A M.R.S. § 2411(1–A)(A) (2006) states:

 1–A. Offense. A person commits OUI if that person:

 A. Operates a motor vehicle:

 (1) While under the influence of intoxicants; or

 (2) While having a blood-alcohol level of 0.08% or more. . . .

to tell its witnesses not to testify about the passengers' arrests.

[¶ 7] Smith, Waterman, and Finnegan all testified at the trial. During her direct examination, when asked if she recalled the identification of the operator of the vehicle, Waterman answered "Winslow" and added: "There was also John Staples taken into custody for a probation violation." The prosecutor immediately said: "Don't get into that. Just focus on the defendant."

[¶ 8] At the conclusion of Waterman's direct testimony, Winslow moved for a mistrial because of Waterman's mention of the passenger's arrest. The court denied the motion and said it would give an instruction. On cross-examination, when Waterman was asked the reason that she, as back-up officer, had conducted the intoxilyzer test, she said, "I don't remember why. There were two individuals that were transported to the jail...." Winslow objected to this answer, and the prosecutor acknowledged that he had failed to instruct Waterman not to mention the arrest of the passengers. The court again said it would give a curative instruction to the jury.

[¶ 9] The State also presented the testimony of an expert witness, the chemist who tested Winslow's urine. The expert testified that he found hydrocodone, the active ingredient in Vicodin, as well as oxycodone and nordiazepam, in the urine specimen.

[¶ 10] Winslow took the stand and testified that he had been to the Windsor Fair with friends on the evening of the arrest. He had only one wine cooler to drink because he had a severe toothache. To ease the tooth pain, he snorted Vicodin, which his dentist had prescribed and which a friend said would work faster if he snorted it. After leaving the fair, Winslow was pulled over at an OUI checkpoint in Union by a police officer, who let him go. He was then subsequently stopped by Smith in Rockland. Winslow testified that the Vicodin and the wine cooler did not "bother" his driving.

[¶ 11] Winslow presented Detective Burgess, who testified that he had worked at an OUI safety checkpoint on Route 17 the evening that Winslow had been arrested. Burgess did not remember stopping Winslow, but he testified that he had spoken earlier to Winslow's attorney and told him that he had stopped a work truck at the checkpoint. He said he had a brief contact with the operator but had no reason to detain him further. On cross-examination Burgess testified that he did not remember whether Winslow was the operator of any vehicle that he had stopped on September 4. Burgess testified that he was a domestic violence investigator and that the last time he made an OUI arrest was in the late 1990s. He testified that he had never been trained to recognize impairment caused by drugs.

[¶ 12] At the close of the evidence, Winslow again brought up Waterman's testimony about the arrested passengers. Winslow said to the court that "a correcting instruction ... will be fine to the defense." After closing statements, during its general instructions, the court instructed the jury that the reference to passengers had nothing to do with the case and should be disregarded entirely.

[¶ 13] During his closing statement, the prosecutor said, "[W]hat I mentioned earlier about using your common experiences and common sense applies to the .04 as well. Now, we know that if you test at a .04 then you had more than one drink. There's no question about that." Winslow immediately objected, and the court stated, "The jury is aware that the closing is not evidence." The prosecutor continued with the closing statement: "Again, if you drank only one wine cooler earlier in the

night, I believe the testimony of the defendant was that he [ ] drank a wine cooler at the Windsor Fair, and then an hour and a half later he took an intoxilyzer test, you wouldn't be at a .04. You would be much lower."

[¶ 14] The prosecutor also commented, during his rebuttal closing statement, on Burgess. The prosecutor said, "I work with Detective [ ] Burgess often. He's a good individual. He's a good officer. But the reality is he doesn't do road stops. He's a domestic violence investigator. His job is not to go out and make OUI arrests." He further stated that Burgess was not qualified to give an opinion on drug impairment and had not been trained to recognize when someone was impaired with drugs.

[¶ 15] The jury found Winslow guilty of OUI, and the court proceeded to sentencing. Winslow asked that no jail be imposed, and he pointed out to the court that the complaint indicated that no jail time would be requested by the State. The State responded that at the time the complaint was drafted, the State was unaware of Winslow's criminal history, and that the statement of "No Jail Requested" on the complaint was only to notify the court that court-appointed counsel would not be necessary. The State requested a sentence of 180 days in jail with all but seven days suspended and a period of probation. The State reported that Winslow had prior OUI convictions in 1984 and 1985 as well as other motor vehicle convictions and that he had an extensive criminal history including several felonies and a 2002 conviction for unlawful possession of drugs.

[¶ 16] The court sentenced Winslow to 180 days in jail, suspending all but five days, and probation for one year. The court also imposed a fine and period of license suspension. In imposing the sentence, the court alluded to Winslow's history and the seriousness of mixing drugs and alcohol. Winslow's post-judgment motion for acquittal was denied.

## II. DISCUSSION

### A. Prosecutorial Misconduct

[¶ 17] Winslow claims three instances of prosecutorial misconduct: (1) the prosecutor failed to tell his witness not to mention the arrests of Winslow's passengers after having been ordered by the court to do so; (2) the prosecutor told the jury that a blood-alcohol level of .04% meant that Winslow had more than one wine cooler although no evidence had been presented to support that statement; and (3) the prosecutor stated his personal opinion of Burgess's credibility.

[¶ 18] With regard to the first instance, for which Winslow made a motion for mistrial, we review the denial of the motion for abuse of discretion. *State v. Bridges*, 2004 ME 102, ¶ 10, 854 A.2d 855, 858. As to the second instance, we review the court's ruling on Winslow's objection for abuse of discretion. *State v. Pineau*, 463 A.2d 779, 781 (Me.1983). We review the third instance for obvious error as Winslow did not preserve the issue. *State v. Pelletier*, 673 A.2d 1327, 1330 (Me.1996).

### 1. Failure to Instruct Witness

[¶ 19] The court did not abuse its discretion in refusing to grant a mistrial for the State's failure to instruct one of its witnesses not to mention the arrests of Winslow's passengers. Generally, when a witness testifies to inadmissible evidence, a defendant is only entitled to a curative jury instruction, not a mistrial. *State v. Bridges*, 2004 ME 102, ¶ 12, 854 A.2d 855, 859. A curative instruction usually preserves a fair trial unless "there are exceptionally prejudicial circumstances or prosecutorial bad faith." *State v. Hinds*, 485

A.2d 231, 235 (Me.1984) (quoting *State v. Hilton,* 431 A.2d 1296, 1302 (Me.1981)).

[¶ 20] Here, the prosecutor did not ask any questions that were intended to solicit a response from the witness about the passengers. Instead, the witness went beyond what was needed to answer the prosecutor's question. Indeed, the prosecutor said: "Don't get into that. Just focus on the defendant." The court gave an appropriate curative instruction, to which Winslow appeared to acquiesce, telling the jurors to disregard any testimony about the passengers. There was no indication that the prosecutor acted in bad faith, nor did any exceptional prejudice result from the prosecutor's failure to instruct the witness as earlier ordered by the court. *Id.* at 235. The court did not abuse its discretion in refusing to grant the mistrial motion.

2. Statement About Blood–Alcohol Level

■ [¶ 21] The prosecutor's statement about the blood-alcohol level was impermissible because it was not based on the facts in evidence. *See State v. Lockhart,* 2003 ME 108, ¶ 48, 830 A.2d 433, 449. The prosecutor told the jurors to use their common sense in evaluating Winslow's testimony that he had only one wine cooler, in light of Winslow's blood-alcohol level of .04%. However, the number of wine coolers that will result in a blood-alcohol level of .04% is not common knowledge, and no evidence of this had been presented to the jury. Without some evidence on this point, the prosecutor was injecting a fact that may have been based on his experience, but that was not in evidence. The prosecutor should not have made such statements about the amount of alcohol required to reach a certain blood-alcohol level.

[¶ 22] The question remains as to whether the court erred in its ruling on Winslow's objection to the prosecutor's misconduct. The court immediately stated that the jury was aware that the closing statement was not evidence. However, the court's remark was apparently taken by the prosecutor as an indication that he could continue along those lines, and he basically repeated what he had said earlier. In his closing statement Winslow pointed out that a person's blood-alcohol level is dependent on many factors including height, weight, and consumption of food, and that the State had presented no evidence on those factors.

[¶ 23] Later, during its general instructions, the court told the jury that "the closing arguments of the attorneys are not evidence." The court also instructed the jury members that they were to decide the case based upon the evidence and that the evidence consisted of the sworn statements of the witnesses and the exhibits. The instructions were appropriate.

■ [¶ 24] Whether the instructions were sufficient to cure any prejudice that may have otherwise resulted is a close question. However, unless there is prosecutorial bad faith or exceptionally prejudicial circumstances, curative instructions are sufficient. *Bridges,* 2004 ME 102, ¶ 12, 854 A.2d at 859. Although the prosecutor's statements were impermissible, there is no indication that they were made in bad faith. Furthermore, any prejudice to Winslow's credibility was not exceptional. Therefore, we will not vacate the conviction because of the prosecutor's closing statement.

3. Personal Opinion of Witness's Credibility

■ [¶ 25] The final instance of prosecutorial misconduct alleged by Winslow is that of the prosecutor giving his personal opinion as to the credibility of Detective Burgess. Lawyers are prohibited from asserting a personal opinion "as to the credi-

bility of a witness." M. Bar R. 3.7(e)(2)(v). While the prosecutor should have refrained from talking about his work with Burgess, the statements that Burgess is a "good person," but that he is a domestic violence investigator who does not perform road stops or OUI arrests are, at most, an indirect expression of opinion about Burgess's credibility. Furthermore, this characterization of Burgess's law enforcement activities was consistent with Burgess's own testimony. Accordingly, the prosecutor's statements did not prejudice Winslow in any substantial way and do not rise to the level of obvious error.

B. Challenge to Sentence

■ [¶ 26] Winslow contends that by imposing a jail sentence, the court deprived Winslow of his right to a jury trial and due process. Winslow argues that his sentence is illegal because the court imposed a jail sentence in spite of the fact that the complaint that initiated the criminal proceedings states *"No Jail Requested."* What Winslow seems to mean is that, if he had pleaded guilty, he would not have been sentenced to jail because of the wording on the complaint. Winslow argues that it was his plea of not guilty and the jury trial that caused the State to request, and the court to impose, a jail sentence.

■ [¶ 27] We review Winslow's challenge to his jail sentence for illegality. Generally, a defendant is not entitled to a direct review of a sentence and must seek review through the sentence review process. 15 M.R.S. §§ 2151–2157 (2006). Furthermore, for sentences of less than one-year imprisonment, appellate review through the sentence review process is not available. 15 M.R.S. § 2151. Nonetheless, when a defendant claims that the sentence is illegal and when the illegality appears on the face of the record, we will review the sentence on direct appeal. *State v. Briggs*, 2003 ME 137, ¶ 4, 837 A.2d

113, 115–16. When a defendant claims that his sentence has been increased because he has taken advantage of his right to a jury trial, "his claim of error goes to the legality of the sentencing decision. . . ." *State v. Farnham*, 479 A.2d 887, 889 (Me. 1984).

■ [¶ 28] By way of background on this issue, it should be noted that our criminal rules provide that counsel must be appointed to an indigent defendant who is charged with a Class D or E crime unless the defendant chooses to proceed without counsel "or unless the court concludes that in the event of conviction a sentence of imprisonment will not be imposed." M.R.Crim. P. 44(a)(1). The courts are assisted in making this determination of the prospects of incarceration by the State's assessment as to whether it will be recommending a sentence of imprisonment in the event of conviction. Thus, at a defendant's first appearance on a Class D or E offense, particularly when the defendant requests appointed counsel, the court will often ask the State if it will be recommending a sentence of imprisonment in the event of conviction. In this case, the State, presumably anticipating the court's inquiry, indicated on the complaint itself that no sentence of imprisonment would be requested. Thus, the statement on the complaint, *"No Jail Requested,"* is the State's assessment at the time the complaint is filed, that it will not be asking for a jail sentence in the event of conviction.

[¶ 29] Although Winslow suggests that either the State, in its recommendation after trial, or the court, in imposing the jail sentence, was punishing Winslow for exercising his right to a jury trial, nothing in the record supports that suggestion. This is not a case like *State v. Dansinger*, 521 A.2d 685, 690 & n. 7 (Me.1987), in which we vacated sentences that were imposed after the sentencing court told the defen-

dants that their jury trial had "cost the taxpayers quite a bit of money," or *State v. Sutherburg,* 402 A.2d 1294, 1296 (Me.1979), in which we vacated the sentence because the sentencing court told the defendant that an additional $750 fine would be imposed because of the expense of the jury trial.

[¶ 30] The court's remarks at Winslow's sentencing, made after the State's long recitation of his criminal record, indicated that it was basing the sentence on that history and on the facts that came out during trial relating to Winslow's mixing drugs and alcohol. Nothing in the court's brief remarks at the sentencing indicated that the court was imposing a jail sentence in retaliation for Winslow's exercise of his right to a jury trial. On this record, there is no reason to believe that the sentence was imposed in whole or in part to punish Winslow for going to trial.

[¶ 31] It is to be expected that, on the whole, defendants who plead guilty to criminal offenses receive more lenient sentences than defendants who go to trial. Nancy J. King, et al., *When Process Affects Punishment: Differences in Sentences After Guilty Plea, Bench Trial, and Jury Trial in Five Guidelines States,* 105 COLUM. L. REV. 959, 962–64 (2005) (stating that nationwide data show that guilty plea sentences are the least punitive while sentences after jury trial are the most punitive with bench trial sentences in the middle). Remorse and acceptance of responsibility are factors that courts look at in sentencing, *Farnham,* 479 A.2d at 891; *State v. Samson,* 388 A.2d 60, 67–68 (Me.1978), and defendants who plead guilty are more likely to demonstrate sincere remorse than defendants who do not plead guilty. The trial exposes a defendant to a much lengthier scrutiny by the sentencing court than would take place with a plea of guilty. *Alabama v. Smith,* 490 U.S. 794, 801, 109 S.Ct. 2201, 104

L.Ed.2d 865 (1989). The trial may bring to light facts about the defendant and the crime that are unfavorable to the defendant and that may not come to the attention of the court in a plea proceeding. *See id.* The length of time waiting for trial generally gives the State additional opportunity to research the defendant's criminal record. It is permissible for plea agreements to involve a recommendation of a more lenient sentence than the prosecutor would recommend after trial. *Bordenkircher v. Hayes,* 434 U.S. 357, 363–64, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

[¶ 32] The mere fact that a sentence is harsher after trial than it might have been had the defendant pleaded guilty does not give rise to an implication that the sentence was given to punish defendant for proceeding to trial. The only fact from the record that Winslow can muster for his argument that his sentence was illegal is that he was given jail time when the complaint stated *"No Jail Requested."* With only that fact, Winslow has not met his burden of demonstrating that his sentence is illegal.

The entry is:

Judgment affirmed.