2008 ME 38

**STATE of Maine**

v.

**Michael E. GRINDLE.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Jan. 24, 2008.

Decided: March 4, 2008.

Steven A. Juskewitch, Esq., Ellsworth, ME, for Michael E. Grindle.

Michael E. Povich, Dist. Atty., Carletta M. Bassano, Dep. Dist. Atty., Ellsworth, ME, for State of Maine.

Panel: CLIFFORD, ALEXANDER, LEVY, SILVER, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] Michael E. Grindle appeals from a judgment of conviction for (1) unlawful possession of heroin (Class C), in violation of 17–A M.R.S. § 1107–A(1)(B)(1) (2007); and (2) unlawful possession of cocaine and/or oxycodone (Class D), in violation of 17–A M.R.S. § 1107–A(1)(C) (2007), entered by the Superior Court (Hancock County, *Hjelm, J.*) upon a jury verdict finding him guilty of these and two other charges. He argues that (1) the sentencing court's disbelief of his exculpatory testimony and its use of that testimony as an aggravating factor in sentencing violated his Sixth Amendment right to trial by jury, Fourteenth Amendment right to due process, and rights under the State's sentencing procedure; and (2) there was insufficient evidence to support the jury verdict of intentional or knowing possession for conviction on the two drug charges.

[¶ 2] Because the evidence in the record, including syringes containing heroin, cocaine, and oxycodone residue seized

from Grindle's vehicle, was more than sufficient to support the conviction, *see State v. Woo*, 2007 ME 151, ¶¶ 5, 20–21, 938 A.2d 13, 14, 17, and the court at sentencing appropriately considered aggravating factors learned at trial, we affirm. We discuss in detail only the sentencing issue.

## I. CASE HISTORY

[¶ 3] The record indicates that the following information was before the court at trial and sentencing. On April 25, 2004, at approximately 9:00 A.M., on Surry Road in Ellsworth, Grindle was operating a vehicle without an inspection sticker when he was stopped by an Ellsworth police officer. Grindle did not produce a driver's license and falsely stated that his name was "Michael Brown." The officer performed a Bureau of Motor Vehicles (BMV) license check on the name "Michael Brown" with the date of birth provided by Grindle and found that Grindle was not who he claimed to be. After further, unproductive discussion with Grindle, the officer called the owner of the vehicle who identified the driver as Michael Grindle. Grindle then admitted his identity.

[¶ 4] The officer checked Grindle's name with the BMV database, learned that his license was revoked, and placed Grindle under arrest. While preparing to inventory the vehicle before it could be towed, the officer asked Grindle if there was anything in the vehicle he should know about that would "cut me or stick me." Grindle indicated that there was nothing in the vehicle that might injure the officer. The officer then began an inventory search on the driver's side of the vehicle. He observed a bulge under the floor mat, lifted the mat, and found a syringe. The syringe needle stuck the officer as he picked it up. Grindle was then transport-ed to the county jail and the vehicle was towed.

[¶ 5] The subsequent search of the vehicle located ten additional syringes at various places in the vehicle, plus associated drug-related items. All the syringes appeared to have been used and to contain residue. The syringes were transported to the Health and Environmental Testing Lab in Augusta. The Lab determined that the syringes contained cocaine, heroin, and oxycodone.

[¶ 6] The Hancock County Grand Jury issued a four-count indictment charging Grindle with unlawful possession of heroin (Class C), unlawful possession of cocaine or oxycodone (Class D), illegal possession of hypodermic apparatuses (Class D), 17–A M.R.S. § 1111(1) (2007), and operating after habitual offender revocation (Class D), 29–A M.R.S. § 2557(1), (2)(A) (2006).[1] Grindle pleaded not guilty to the charges, and bail was set pending his jury trial.

[¶ 7] While on bail awaiting trial, Grindle was charged with two new offenses, operating after habitual offender revocation (Class C), 29–A M.R.S. § 2557(2)(B) (2006), and violation of condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2007). The new offenses were not tried with the offenses that are the subject of this appeal.

[¶ 8] Grindle testified at his trial. He admitted he was aware that there were syringes in the trunk of his vehicle. He claimed he had taken the syringes from a party where others had been using them and believed that the needles had been "rinsed out" so that there "wasn't enough in it ... to get a flea high." He said he placed a knapsack with the syringes in his trunk and then forgot about the syringes until he was arrested. He claimed he had

---

1. This statute has since been repealed and replaced by P.L.2005, ch. 606, Part A § 11 (effective April 28, 2006) (codified at 29–A M.R.S. § 2557–A (2007)).

no reason to suspect that any drugs remained in the syringes. Grindle's claims, if credited by the jury, might have created a reasonable doubt as to whether Grindle possessed the scheduled drugs intentionally or knowingly, an essential element of each drug offense.

[¶ 9] After the jury returned a verdict of guilty on all four counts, the court continued the case for sentencing at Grindle's request. Approximately two weeks prior to sentencing, Grindle pleaded guilty to the two new charges, which were then considered for sentencing along with the four charges upon which the jury had returned the guilty verdict.

[¶ 10] At sentencing, the court discussed the fact that Grindle lied to the officer about his identity and placed the officer at risk by not telling him about the syringes when he searched the vehicle. As a result, the court set Grindle's base sentence for the Class C heroin possession charge at fifteen months. The sentencing court considered Grindle's "longstanding criminal history" and motor vehicle record as aggravating factors.[2] The court also indicated that it found the subsequent operating after revocation to be an aggravating factor, because Grindle was on bail and thus violated his bail.[3] Additionally, the sentencing court considered Grindle's trial testimony to be an aggravating factor, stating, "Mr. Grindle chose to testify in an exculpatory way. The jury rejected that testimony ...." The implication of the court's comment was that the court believed that Grindle testified falsely. The court also indicated that it considered sev-

eral mitigating factors, including development of a stable lifestyle, steady work, assisting his elderly and sick family members, taking responsibility for other crimes he has committed, and his involvement in a drug rehabilitation program.

[¶ 11] The court found the aggravating factors outweighed the mitigating factors and sentenced Grindle to an underlying sentence of thirty months, with all but fifteen months suspended and two years probation on the heroin possession charge. In determining how much of the sentence to suspend, the court indicated it was taking into account the seriousness of the crime and Grindle's "substantial criminal history."[4] The court imposed concurrent six-month sentences on the two operating after revocation charges, the cocaine/oxycodone possession charge, and the hypodermic apparatus charge, and a concurrent thirty-day sentence on the violation of condition of release charge. A mandatory $1000 fine was imposed on the Class C operating after revocation charge.

[¶ 12] Grindle filed this timely appeal and, pursuant to M.R.App. P. 20, petitioned for review of his sentence on the heroin possession charge. Although Grindle's petition for review of sentence was denied, he maintains his challenge to his sentence in this direct appeal.

## II. LEGAL ANALYSIS

### A. Standing to Appeal Sentence

[¶ 13] Denial of a request to appeal a sentence is "final and subject to no

---

2. Specifically, the court referenced five operating after suspension convictions and the recent operating after revocation conviction.

3. The court stated that generally people on bail tend to "be very cautious and careful about their behavior" because they are aware of the consequences.

4. The court in determining the suspended portion of the sentence did state, "I've thought ... about whether I could suspend more, it would almost be a mirror image of the sentences that were imposed in 1994; .... And that one-year sentence wasn't enough."

further review." M.R.App. P. 20(f). Defendants are generally not entitled to direct review of a sentence; instead, they must seek review through the sentence review process. *State v. Winslow,* 2007 ME 124, ¶ 27, 930 A.2d 1080, 1087. A direct appeal is allowed, however, when a defendant asserts that his sentence is illegal and the illegality is apparent on the record. *Id.; State v. Briggs,* 2003 ME 137, ¶ 4, 837 A.2d 113, 115–16. "On direct appeal, we review only the legality, not the propriety, of a sentence." *State v. Hodgkins,* 2003 ME 57, ¶ 5 n. 3, 822 A.2d 1187, 1190–91.

[¶ 14]  Grindle's appeal is properly before us because he asserts that the court illegally used its belief that he testified falsely as an aggravating factor in setting his sentence, claiming such use violated his constitutional right to testify. On at least three prior occasions, we have considered on direct appeal, as a challenge to the legality of a sentence, a defendant's claim that a sentencing court improperly considered that the defendant testified falsely as an aggravating factor in sentencing. *See State v. Duncan,* 476 A.2d 191, 191–92 (Me.1984); *State v. Hines,* 472 A.2d 422, 423 (Me.1984); *State v. Plante,* 417 A.2d 991, 994–96 (Me.1980); *see also State v. Farnham,* 479 A.2d 887, 889 (Me.1984) (stating that a defendant's objection to the court's consideration of his exercise of the right to trial as an aggravating factor in sentencing is a challenge to the legality of the sentence that may be heard on direct appeal).

B.  Consideration of Trial Events in Sentencing

■ [¶ 15]  Every criminal defendant has a constitutional right to a jury trial, and to testify at that trial, and those rights may be exercised without prejudice to the defendant. We have vacated sentences that we determined were imposed or enhanced as retribution for a defendant exercising his right to trial. In *State v. Dansinger,* 521 A.2d 685, 690 & n. 7 (Me.1987), we vacated sentences that were imposed after the sentencing court told the defendants that their jury trial had "cost the taxpayers quite a bit of money." In *State v. Sutherburg,* 402 A.2d 1294, 1296 (Me. 1979), we vacated a sentence because the sentencing court told the defendant that an additional $750 fine would be imposed because of the expense of the jury trial.

[¶ 16]  Grindle asserts that the sentencing court improperly characterized his testimony as "less truthful because it was exculpatory." He also argues it was improper for the court to punish him for exercising his right to testify and justify its punishment by determining that the jury did not believe him. Thus, Grindle asserts the sentencing court violated his constitutional and statutory rights.

■ [¶ 17]  While a criminal defendant has a right to trial, and a right to testify at that trial, a defendant does not have a right to testify falsely without risk of sanction. The United States Supreme Court has held that "[i]t is well established that a criminal defendant's right to testify does not include the right to commit perjury." *LaChance v. Erickson,* 522 U.S. 262, 266, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998). That Court has also held that a criminal defendant's sentence may be enhanced when the trial court finds that the defendant perjured himself at trial. *United States v. Dunnigan,* 507 U.S. 87, 96–97, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). These opinions are consistent with our precedents applying state and federal constitutional rights to have a trial and to testify.

■ [¶ 18]  We have said that sentencing courts must "individualize" sentences and consider all mitigating and aggrava-

ting factors regarding the offender and the offense. *State v. Hewey*, 622 A.2d 1151, 1154–55 (Me.1993); *State v. Samson*, 388 A.2d 60, 67 (Me.1978). Courts have broad discretion in determining what information to consider in sentencing; they are limited only by the due process requirement that such information must be "factually reliable and relevant." *Hewey*, 622 A.2d at 1154; *see also State v. Whitten*, 667 A.2d 849, 852 (Me.1995).

[¶ 19] There is a difference between increasing a defendant's sentence because the defendant chooses to exercise the right to trial and to testify, and considering a defendant's conduct at trial and information learned at trial, along with other factors, in determining the genuineness of a defendant's claim "of personal reform and contrition." *Farnham*, 479 A.2d at 889. In *Farnham*, the trial court stated that it did not "punish people for having trials," but it found the defendant's claim of remorse was not credible in light of his "having put that little girl through the agony of cross-examination with discussion of her mental health . . . ." *Id.* at 890.

[¶ 20] In *Farnham*, as here, the defendant asserted that the sentencing court improperly considered his exercising his right to trial as an aggravating factor in sentencing. We recognized the "black-letter law that an accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to a trial." *Id.* at 891. However, we indicated that we would not review the court's references to the defendant's demand for trial and conduct at trial in isolation, but would evaluate the court's comments in the context of the other sentencing considerations cited by the sentencing court. *Id.* at 890–91. Those considerations included "the gravity of the offense; its relation to the victim of the crime; defendant's background, including his drug and alcohol problems and his long record of criminal conduct; his remorse and repentance; his receptivity to rehabilitation; and the interest of the public in retribution and deterrence." *Id.* at 891.

[¶ 21] We affirmed the sentencing court's decision, determining that it was not based entirely on the defendant's decision to go to trial and that the defendant was not being punished for exercising his constitutional rights. *Id.* at 891–93. Our discussion included an extensive review of the state of the law regarding consideration of choices to go to trial and trial conduct in sentencing decisions. *Id.* at 890–93.

[¶ 22] Because a trial tends to bring aggravating factors about a defendant and a crime to the court's attention more immediately than does a plea, a sentence imposed after trial may be longer than a sentence imposed after a similar defendant with a similar crime is sentenced following a plea. This fact of criminal practice reveals no constitutional infirmity. As we observed in *Winslow*:

It is to be expected that, on the whole, defendants who plead guilty to criminal offenses receive more lenient sentences than defendants who go to trial. Remorse and acceptance of responsibility are factors that courts look at in sentencing, and defendants who plead guilty are more likely to demonstrate sincere remorse than defendants who do not plead guilty. The trial exposes a defendant to a much lengthier scrutiny by the sentencing court than would take place with a plea of guilty. The trial may bring to light facts about the defendant and the crime that are unfavorable to the defendant and that may not come to the attention of the court in a plea proceeding. The length of time waiting for trial generally gives the State additional

opportunity to research the defendant's criminal record. It is permissible for plea agreements to involve a recommendation of a more lenient sentence than the prosecutor would recommend after trial.

The mere fact that a sentence is harsher after trial than it might have been had the defendant pleaded guilty does not give rise to an implication that the sentence was given to punish the defendant for proceeding to trial.

2007 ME 124, ¶¶ 31–32, 930 A.2d at 1088 (citations omitted).

[¶ 23] In *Winslow*, the original complaint had indicated, "[no] jail requested." *Id.* ¶ 5, 930 A.2d at 1083. Winslow exercised his right to a jury trial. *Id.* After a guilty verdict, the court imposed an underlying sentence of 180 days to the county jail, with five days to be served. *Id.* ¶¶ 15, 16, 930 A.2d at 1085. Winslow appealed, asserting that his constitutional right to trial had been violated because he received a jail sentence after trial when he would have received no jail time had he pleaded early in the proceedings. *Id.* ¶ 26, 930 A.2d at 1087. We determined that the sentencing court in *Winslow* based its decision on the defendant's criminal record and history of mixing drugs and alcohol, not his choosing to go to trial. *Id.*, 2007 ME 124, ¶ 30, 930 A.2d at 1088. We affirmed, finding no indication in the record that the sentence was imposed as a punishment for the defendant exercising his constitutional right. *Id.*, 2007 ME 124, ¶¶ 29–30, 930 A.2d at 1087–88.

[¶ 24] In *State v. Plante*, the sentencing court said it believed the defendant perjured himself and had witnesses perjure themselves, and based on that, the court sentenced the defendant to ninety-days in jail.[5] 417 A.2d 991, 995 (Me.1980). The defendant argued this violated his due process right to be convicted by a jury, before being sentenced for perjury. *Id.* at 995. In affirming the sentence, we cited *United States v. Grayson*, 438 U.S. 41, 53, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), which held that "conside[ration of] the defendant's whole person and personality, as manifested by his conduct at trial and his testimony under oath, for whatever light those may shed on the sentencing decision" is permissible. *Id. Grayson* held that a court could consider the fact that a defendant lied on the stand in imposing a sentence. 438 U.S. at 52, 98 S.Ct. 2610.

[¶ 25] In *Plante*, we indicated that a defendant's respect for the truth, "as manifested by his testimony at trial, is one component of his general attitude toward other persons and hence has some relevance in predicting his response to efforts at rehabilitation." 417 A.2d at 996 (citing *Grayson*, 438 U.S. at 53, 98 S.Ct. 2610).

[¶ 26] Here, the sentencing court did state, explicitly, that it considered Grindle's "exculpatory testimony," which the court suggested was untruthful, to be an aggravating factor, because it demonstrated his unwillingness to accept responsibility for his actions and his lack of remorse. Such a consideration is permissible to support our goal that the court properly individualize the sentence, considering all ag-

---

5. The defendant in *State v. Plante*, testified that he had only had four beers. 417 A.2d 991, 994–95 (Me.1980). There, however, he claimed he started drinking at 8:00 P.M. and drank the four beers over a period of four hours, went to McDonald's for thirty to forty-five minutes to eat, drove for thirty minutes to the place where he was arrested, and another thirty to forty-five minutes elapsed before the blood test was administered. *Id.* Thus, the sentencing court noted that after a six-hour period, after allegedly having only four beers, the defendant's blood test showed 0.12. *Id.* at 995. The court indicated it did not believe this was possible. *Id.*

gravating and mitigating factors regarding the offender and the offense, *see Hewey,* 622 A.2d at 1154–55; *Samson,* 388 A.2d at 67–68. The sentencing court also considered Grindle's criminal history and his subsequent problems with the law, as aggravating factors. Thus, the court did not base its decision solely on Grindle's exercising his right to testify and its belief that Grindle testified untruthfully. Instead, the court properly considered several aggravating factors and did not abuse its discretion in finding those factors outweighed the mitigating factors.

[¶ 27] The sentence was not imposed in an improper or illegal manner and is not itself improper or illegal.

The entry is:

Judgment affirmed.