MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2023 ME 18
Docket:        Pen-21-350
Argued:        June 6, 2022
Decided:       February 28, 2023

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE JJ.

STATE OF MAINE

v.

RAYSHAUN MOORE

CONNORS, J.

[¶1]  Rayshaun Moore appeals from a judgment of conviction of murder, 17-A M.R.S. § 201(1)(A)-(B) (2022), entered by the trial court (Penobscot County, *Anderson, J.*) after a jury trial.  Moore argues that the trial court erred by denying his request to examine the grand jury transcript and by considering his decision to go to trial as an aggravating factor at sentencing.[1] We affirm the judgment of conviction but vacate the sentence.

---

[1]  Moore makes two additional arguments on appeal.  First, he argues that the trial court erred by stating during jury selection that, because of the right to a jury trial, the court must "inconvenience people like you."  This argument is without merit, and we do not address it further.  *See State v. Fleming*, 644 A.2d 1034, 1036-37 (Me. 1994).  Second, Moore argues that the trial court abused its discretion by allowing the lead detective to identify Moore in surveillance videos.  *See* M.R. Evid. 701.  Moore's argument raises the issue whether a witness who has substantial familiarity with complex video evidence may offer lay opinion testimony to assist the trier of fact in interpreting that evidence.  *See United States v. Begay*, 42 F.3d 486, 502-03 (9th Cir. 1994); *United States v. Torralba-Mendia*, 784 F.3d 652, 659-60 (9th Cir. 2015); *United States v. Muhammad*, 512 F. App'x 154, 160-61 & n.7 (3d Cir. 2013); *United States v. Zepeda-Lopez*, 478 F.3d 1213, 1221-23 (10th Cir. 2007).  Whether the State laid an adequate foundation under that theory or under a more traditional approach is debatable.  We need not address these questions, however, because

## I. BACKGROUND

[¶2] Viewing the evidence in the light most favorable to the jury's verdict, the record supports the following facts. *See State v. Athayde*, 2022 ME 41, ¶ 2, 277 A.3d 387.

[¶3] On the evening of January 31, 2020, Moore, the victim, and several others were "hanging out" at Moore's apartment in Bangor. At approximately 9:00 p.m., one of Moore's roommates asked "everybody" to leave because they were being too loud. The victim and some of the others left in a car. Moore and one of the others left on foot shortly thereafter. About an hour later, the victim and some of the others returned to Moore's apartment, looking for Moore. When Moore's other roommate said that Moore was not there, "they" accused Moore's roommate of lying and tried to force their way into the apartment. One of Moore's roommates contacted Moore through Facebook to tell Moore what had happened and to tell Moore to "take care of it." Moore sent that roommate an audio Facebook message in return stating, "I'm going to end [inaudible] this shit in my own [inaudible] way on the streets."

whether or not the detective's testimony was properly admitted, we conclude that the testimony was harmless because Moore admitted to being involved in the confrontation depicted in the videos; the jury viewed the videos numerous times during the trial and twice during deliberations, suggesting that the jury decided for itself who was depicted in the videos; and the record contains overwhelming evidence in support of the jury's verdict. *See* M.R.U. Crim. P. 52(a); *State v. White*, 2002 ME 122, ¶ 16, 804 A.2d 1146.

[¶4]  Around 11:00 p.m., Moore, the victim, and several others met in the parking lot of the Half Acre Nightclub.  A physical fight broke out among them, during which the victim punched Moore in the face.  After the fight, Moore returned to his apartment where he told one of his roommates that he "might catch a body" and "might end up in jail."  Moore appeared to be angry, and his roommate tried to stop him from leaving.

[¶5]  Moore returned to the Half Acre Nightclub.  Shortly after midnight, on February 1, 2020, the victim also returned to the night club.  Almost immediately, Moore confronted the victim, chased him around the parking lot, and stabbed him seven times.  The victim later died.

[¶6]  After the stabbing, Moore went to a friend's apartment.  Moore, who had blood all over his hands and clothes, stated that he had stabbed his friend and that he had thrown the knife in the river.  Moore removed some of his clothes and put them in a trash bag.

[¶7]  After hearing about the stabbing, one of Moore's roommates checked Moore's nightstand to see whether Moore's knife was there and found that it was missing.  When Moore returned to his own apartment, he told one of his roommates that he "had just caught a body" and that "the cops would

4

probably be there looking for him."  He also told one of his roommates not to talk to the police.

[¶8]  Police recovered Moore's wallet and keys, which he had dropped in the parking lot where the victim was stabbed.  Moore's friend gave police the bag containing Moore's bloody clothes—which, at some point, had been covered in bleach—and told them that Moore had thrown the knife in the river. Because the knife had landed on a frozen section of the river, police were able to recover it.  Moore's roommate identified the knife as belonging to Moore. The victim's and Moore's DNA were found on the knife, and the victim's DNA was found in blood samples collected from Moore's jacket and left shoe.

[¶9]  The State charged Moore by complaint with intentional or knowing murder, 17-A M.R.S. § 201(1)(A).  Moore filed a motion in the trial court requesting that the grand jury proceedings be recorded.  The court granted Moore's motion to record the proceedings.

[¶10]  A few months later, the grand jury indicted Moore for intentional or knowing murder and depraved indifference murder.  *See* 17-A M.R.S. § 201(1)(A)-(B). Moore filed a motion requesting that a transcript of the grand jury proceedings be prepared and that the transcript be disclosed to the parties

under a protective order. Moore argued that he needed the grand jury transcript in order "to mount a complete defense." The State objected.

[¶11] The court held a hearing on Moore's motion. Moore reiterated his need to prepare a complete defense and argued that disclosure of the transcript would put him on "a level playing field" with the State. Moore further argued that, as a matter of policy, the grand jury transcript should be provided to any defendant who has been charged with a serious offense and intends to go to trial. To preserve the secrecy of the grand jury, Moore suggested that the court redact the names of the grand jury witnesses and prohibit any further dissemination of the transcript. Noting that the governing rule requires a showing of a "particularized need," *see* M.R.U. Crim. P. 6(g), and that Moore's argument applied to "most any case," the court ordered the preparation of the grand jury transcript but denied Moore's request for its disclosure. The court posited that if a witness were to testify at trial in a manner inconsistent with his or her grand jury testimony, the matter could be revisited to determine whether that inconsistency amounted to a "particularized need."

[¶12] During a pretrial conference, Moore renewed his request for the disclosure of the grand jury transcript. Moore listed the names of several potential witnesses and argued that he needed to know whether they had made

6

statements to the grand jury that could implicate their Fifth Amendment rights. The court—and, with hesitation, the State—confirmed that none of the witnesses identified by Moore testified before the grand jury.

[¶13]  After a seven-day trial at which Moore did not testify, the jury returned a verdict of guilty.  Several months later, the court held a sentencing hearing.  Applying the sentencing statute, 17-A M.R.S. § 1602 (2022), the court set the basic sentence at twenty-five years' imprisonment.  In determining the maximum term of imprisonment, the court identified three aggravating circumstances, including Moore's "lack of remorse," Moore's criminal record, and the impact of the murder on the victim's family.  Regarding Moore's lack of remorse, the court stated:

> [T]here are three potential aggravating circumstances that deserve discussion.  One is the lack of remorse.  Well, I have wrestled with this concept for years because if you decide that you will have a trial as the Constitution says you're entitled to, then you sort of run the risk, if you don't get found not guilty, of being—getting a greater sentence because you're not showing remorse by pleading guilty.  And I think that's kind of a conundrum.
>
> And I realize that in, probably, most or all courts, this is commonly done.  If you—if you get convicted after a trial, then you're showing no remorse, and that's a—that's a proper sentencing consideration.  And I'm sure our law court would agree.  I think there could be a different situation if the defendant testifies to a jury and is found guilty anyway.  Then, the—it's implicit that the defendant is lying.  And if you're lying, you're not really showing much remorse for the crime you've been convicted of.

> I think it's a little different if you have a trial, you don't testify, you're just exerting your Constitutional rights. So it is a factor, but I'm going to be conservative in my application of it.

The court found that there were no mitigating circumstances and imposed a thirty-two-year sentence. Moore timely appealed.

## II. DISCUSSION

### A. The trial court did not err or abuse its discretion when it denied Moore access to the grand jury transcript.

[¶14] Moore argues that the trial court erred or abused its discretion by denying his request to provide him with access to the grand jury transcript, relying on M.R.U. Crim. P. 6(g), the Maine Constitution, and the United States Constitution. We review the denial of a request for the release of the grand jury transcript for an abuse of discretion. *See State v. Philbrick*, 551 A.2d 847, 851 (Me. 1988). We review alleged due process violations de novo. *State v. Williamson*, 2017 ME 108, ¶ 21, 163 A.3d 127.

#### 1. Moore failed to establish that he had a particularized need for the grand jury transcript as required by M.R.U. Crim. P. 6(g).

[¶15] M.R.U. Crim. P. 6(g) provides that a court may furnish a copy of the grand jury transcript to the defendant or the State upon a showing of "particularized need." We have consistently affirmed the particularized need standard and rejected attempts to deviate from the requirement. *State v. Doody*,

432 A.2d 399, 401-02 & n.3 (Me. 1981); *see, e.g., Philbrick*, 551 A.2d at 851; *State v. Cote*, 444 A.2d 34, 36 (Me. 1982); *State v. Mahaney*, 437 A.2d 613, 619-20 (Me. 1981); *State v. Cugliata*, 372 A.2d 1019, 1024-26 (Me. 1977).

[¶16]  Moore acknowledged before the trial court that his request for the grand jury transcript was based on his position that defendants should have a broad right to access transcripts of grand jury proceedings.  He makes no claim on appeal that he satisfied the particularized need requirement in the rule as interpreted under our case law; instead, he asks that we reject our "rather old decisions" and set a new course of broad disclosure of grand jury transcripts. We decline Moore's invitation to interpret Rule 6(g) in a manner that all but eliminates the particularized need requirement.

> **2.  Moore's claim that he was entitled to the grand jury transcript under the Maine Constitution is unpreserved and undeveloped**.

[¶17]  Moore invokes both the Maine and United States Constitutions in his claim that his right to due process was violated by the denial of his request to examine the grand jury transcript.  Ordinarily, under our "primacy approach," we address the state claim first, "independently of the federal constitutional claim," and "proceed to review the application of the federal Constitution only if the state constitution does not settle the issue."  *Athayde*,

2022 ME 41, ¶ 20, 277 A.3d 387. In that analysis, we give weight to interpretations of federal counterparts only if they are deemed to be persuasive. *Id.*; *State v. Reeves*, 2022 ME 10, ¶ 41, 268 A.3d 281.

[¶18] Although we have not previously identified the criteria that we will review in our analysis of our state constitution, courts in other jurisdictions have identified the criteria for analyzing their state constitutions.[2] Generally speaking, the review includes, without limitation, an examination of the text, legislative history, and general historical context of the state constitutional provision; relevant common law, statutes, and rules; economic and sociological considerations; and precedent from jurisdictions with similar provisions to the extent that precedent is deemed persuasive.

[¶19] Before the trial court, Moore made no argument based on the state constitution but merely referenced it. Moore also has not engaged in an adequate analysis on appeal.[3] For example, he does not explain why or how his

---

[2] *See, e.g.*, *Sheesley v. State*, 437 P.3d 830, 836-37 (Wyo. 2019); *People v. Tanner*, 853 N.W.2d 653, 666-79 (Mich. 2014); *Kerrigan v. Comm'r of Pub. Health*, 957 A.2d 407, 421 (Conn. 2008); *Kahn v. Griffin*, 701 N.W.2d 815, 829 (Minn. 2005); *Jones v. State*, 745 A.2d 856, 864-65 (Del. 1999); *Commonwealth v. Edmunds*, 586 A.2d 887, 895 (Pa. 1991); *State v. Gunwall*, 720 P.2d 808, 812-13 (Wash. 1986); *State v. Jewett*, 500 A.2d 233, 236-37 (Vt. 1985).

[3] In *State v. Bradberry*, Justice Souter, concurring specially, explained why a party must adequately raise state constitutional issues:

It is the need of every appellate court for the participation of the bar in the process of trying to think sensibly and comprehensively about the questions that the judicial power has been established to answer. Nowhere is the need greater than in the field of State constitutional

10

position is based on the text or legislative history of the Maine Constitution. Nor has he presented any historical context with respect to grand jury proceedings in Maine under the common law, statutes, or rules to support his position.[4] And, finally, Moore has not stated why we should depart from our precedent. *See State v. Levesque*, 281 A.2d 570, 572 (Me. 1971) (concluding that a "[f]ailure to transcribe grand jury proceedings and provide the accused with a transcript of grand jury testimony is not a denial of due process").

[¶20] Given the lack of preservation of Moore's argument at the trial level and his cursory development of the argument on appeal, we decline to engage in an analysis of article I, sections 6, 6-A, and 7, of the Maine Constitution to depart from our holding in *Levesque*. *See United States v. Phillips*, 433 F.2d 1364,

---

law, where we are asked so often to confront questions that have already been decided under the National Constitution. If we place too much reliance on federal precedent we will render the State rules a mere row of shadows; if we place too little, we will render State practice incoherent. If we are going to steer between these extremes, we will have to insist on developed advocacy from those who bring the cases before us.

522 A.2d 1380, 1389 (N.H. 1986) (Souter, J., concurring); *see also State v. Dellorfano*, 517 A.2d 1163, 1166 (N.H. 1986); *Saldana v. State*, 846 P.2d 604, 622-24 (Wyo. 1993) (Golden, J., concurring) (surveying the case law).

[4] For example, an analysis of Maine case law before the ratification of the Fourteenth Amendment of the United States Constitution in 1868, prohibiting states from depriving citizens of due process, could be instructive. *See, e.g.*, *Low's Case*, 4 Me. 439, 439-53 (1827); *McLellan v. Richardson*, 13 Me. 82, 86 (1836); *State v. Burlingham*, 15 Me. 104, 107-08 (1838); *State v. Bailey*, 21 Me. 62, 66-68 (1842); *State v. Knight*, 43 Me. 11, 128 (1857). Likewise, an examination of Maine case law before the adoption of the Federal Rules of Criminal Procedure in 1944 and the Maine Rules of Criminal Procedure in 1965 could also be illuminating. *See, e.g.*, *State v. Benner*, 64 Me. 267, 282-87 (1874); *Hunter v. Randall*, 69 Me. 183, 189 (1879); *State v. Wilkinson*, 76 Me. 317, 319-21 (1884); *State v. Bowman*, 90 Me. 363, 364-68, 38 A. 331 (1897); *State v. Wombolt*, 126 Me. 351, 351-53, 138 A. 527 (1927).

1366 (8th Cir. 1970) ("Such naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.").

### 3. Moore was not entitled to the grand jury transcript under the United States Constitution.

[¶21] Moving on to Moore's federal claim, we previously observed that the United States Supreme Court has not dispensed with the particularized need requirement and that its views concerning access to grand jury testimony are based on its supervisory authority over lower federal courts rather than on the federal constitution. *Cugliata*, 372 A.2d at 1025 & n.2 (citing *Dennis v. United States*, 384 U.S. 855 (1966)). As noted above, Moore does not claim that he had a particularized need for the grand jury transcript here. Instead, while acknowledging that federal case law does not support his position, Moore broadly argues that his right to a fair trial outweighs any state interest in maintaining grand jury secrecy and that disclosure of the transcript should be the default rule. We decline to reimagine the United States Constitution as requiring such disclosure.

**B.** **A criminal defendant's decision to exercise his constitutional right to a jury trial may not be considered at sentencing.**

[¶22]  Moore argues that, by considering his decision to stand trial as an aggravating factor at sentencing, the sentencing court violated his right to a jury trial under the United States Constitution.[5]  *See* U.S. Const. amend. VI.

[¶23]  "Generally, a defendant is not entitled to a direct review of a sentence and must seek review through the sentence review process."  *State v. Winslow*, 2007 ME 124, ¶ 27, 930 A.2d 1080; *see* 15 M.R.S. §§ 2151-2157 (2022).  "Nonetheless, when a defendant claims that the sentence is illegal and when the illegality appears on the face of the record, we will review the sentence on direct appeal."  *Winslow*, 2007 ME 124, ¶ 27, 930 A.2d 1080; *see State v. Discher*, 597 A.2d 1336, 1343 (Me. 1991).  A defendant's claim that his sentence has been increased because he has exercised his right to a trial goes to the legality of the sentence.  *State v. Farnham*, 479 A.2d 887, 889 (Me. 1984).  We review de novo a claim that a constitutional violation has occurred at sentencing.  *State v. Cain*, 2006 ME 1, ¶ 7, 888 A.2d 276.

---

[5]  Moore also argues that, by punishing him based on a perceived lack of remorse at sentencing, the trial court violated his right against self-incrimination under the United States Constitution. Because we conclude that the trial court erred on other grounds, we decline to address Moore's argument.

[¶24]  "It is black-letter law that an accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to a trial."  *Farnham*, 479 A.2d at 891.  Although a court may deny leniency to a defendant who is convicted after a trial, in so doing, it may not consider the defendant's exercise of his right to trial.  In *Winslow*, we observed,

> It is to be expected that, on the whole, defendants who plead guilty to criminal offenses receive more lenient sentences than defendants who go to trial.  Remorse and acceptance of responsibility are factors that courts look at in sentencing, and defendants who plead guilty are more likely to demonstrate sincere remorse than defendants who do not plead guilty.  The trial exposes a defendant to a much lengthier scrutiny by the sentencing court than would take place with a plea of guilty.  The trial may bring to light facts about the defendant and the crime that are unfavorable to the defendant and that may not come to the attention of the court in a plea proceeding.  The length of time waiting for trial generally gives the State additional opportunity to research the defendant's criminal record.  It is permissible for plea agreements to involve a recommendation of a more lenient sentence than the prosecutor would recommend after trial.

2007 ME 124, ¶ 31, 930 A.2d 1080 (citations omitted).

[¶25]  Thus, "[t]here is a difference between increasing a defendant's sentence because the defendant chooses to exercise the right to trial . . . and considering a defendant's conduct at trial and information learned at trial, along with other factors, in determining the genuineness of a defendant's claim

14

of personal reform and contrition."[6]  *State v. Grindle*, 2008 ME 38, ¶ 19, 942 A.2d 673 (quotation marks omitted).  "[A] sentence based in part on an impermissible consideration is not made proper simply because the sentencing judge consider[ed] other permissible factors as well," *Commonwealth v. Bethea*, 379 A.2d 102, 106 (Pa. 1977), and "[t]he quantitative role the impermissible factor played in such decision does not detract from the nature of the constitutional violation,"  *Farnham*, 479 A.2d at 895 n.4 (Glassman, J., concurring in part and dissenting in part).  It follows that simply exercising the right to trial can never be cited as an aggravating factor.

[¶26]  When a sentencing court references a defendant's demand for a trial, we evaluate the reference in the context of the entire sentencing process. *State v. Hayden*, 2014 ME 31, ¶ 24, 86 A.3d 1221.  "[I]t is sufficient to render a sentence invalid if it reasonably appears from the record that the trial court relied in whole or in part upon [the defendant's election to stand trial]." *Bethea*, 379 A.2d at 107.  We need not conclude that the sentencing court in fact relied upon an improper consideration. *Id.* at 106-07.  "Any doubt as to whether the

---

[6] Our jurisprudence has not always been precise, however, in articulating this distinction.  *See, e.g.*, *State v. Farnham*, 479 A.2d 887, 893 (Me. 1984) ("There is a clear-cut distinction between enhancing a sentence because the convicted defendant insisted on a trial and *considering that fact along with others* in assessing how real is defendant's claim of remorse and reform at the time of sentencing." (emphasis added)); *cf. State v. Grindle*, 2008 ME 38, ¶ 26, 942 A.2d 673 ("[T]he court did not base its decision *solely* on Grindle's exercising his right to testify and its belief that Grindle testified untruthfully.  Instead, the court properly considered several aggravating factors . . . ." (emphasis added)).

defendant was punished for exercising his right to trial must be resolved in favor of the defendant." *Farnham*, 479 A.2d at 894-95 (Glassman, J., concurring in part and dissenting in part).

[¶27]  Here, the court concluded that most or all courts would agree that "if you get convicted after a trial, then you're showing no remorse, and . . . that's a proper sentencing consideration."  Although the sentencing court then stated it was going to be conservative in applying this principle, this is of no import because any increase in Moore's sentence for that reason is improper.  Because a fair reading of these remarks suggests that the sentencing court was—or might have been—influenced by Moore's decision to stand trial, we must vacate Moore's sentence and remand for resentencing.[7]

The entry is:

> Sentence vacated.  Remanded for resentencing.
> Judgment affirmed in all other respects.

---

Rory A. McNamara, Esq., Drake Law LLC, York, for appellant Rayshaun Moore

Aaron M. Frey, Attorney General, and Donald W. Macomber, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

---

[7]  Because the trial justice retired during the pendency of this appeal, a different justice will necessarily have to resentence Moore on remand.

16

Penobscot Unified Criminal Docket docket number CR-2020-480
FOR CLERK REFERENCE ONLY