2004 ME 136

STATE of Maine

v.

Mark J. DURANT.

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 9, 2004.

Decided: Nov. 5, 2004.

R. Christopher Almy, District Attorney, C. Daniel Wood, Asst. Dist. Attorney, Bangor, for State.

Randy G. Day, Garland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Mark J. Durant appeals from the judgment of conviction entered in the Superior Court (Piscataquis County, *Mills, C.J.*) following a jury verdict finding him guilty of thirteen counts of assault, 17–A M.R.S.A. § 207(1) (1983) (Class D); [1] one count of terrorizing, 17–A M.R.S.A. § 210(1)(A) (Supp.2002) (Class D); [2] one count of criminal threatening with the use of a dangerous weapon, 17–A M.R.S.A. § 209(1) (1983) (Class C); and one count of reckless conduct with the use of a dangerous weapon, 17–A M.R.S.A. § 211(1) (1983) (Class C). Durant argues that the evidence was insufficient to support the conviction and that the court erred by failing to excuse a potentially biased juror. We affirm the judgment.

---

1. Title 17–A M.R.S.A. § 207 (1983 & Supp. 2002) has since been repealed and replaced by P.L. 2001, ch. 383, § 10 (effective Jan. 31, 2003), *codified at* 17–A M.R.S.A. § 207 (Supp. 2003).

2. Title 17–A M.R.S.A. § 210(1)(A) has most recently been amended by P.L. 2003, ch. 143, § 4 (effective Sept. 13, 2003), *codified at* 17–A M.R.S.A. § 210 (Supp. 2003).

## I. BACKGROUND

[¶ 2] Durant and the victim met in Massachusetts, lived there together for a time, moved to Parkman in 1999, and married in 2000.

[¶ 3] In October 2002, in response to the victim's allegations of physical and emotional abuse, Durant was charged with fifteen counts of assault, one count of terrorizing, one count of reckless conduct with the use of a dangerous weapon, and one count of criminal threatening with the use of a dangerous weapon. A jury trial was held on these charges in September 2003.

[¶ 4] The State's principal evidence consisted of the victim's testimony. Using a 2001 calendar that contained annotations for those days on which Durant's abuse had allegedly left a mark, bruise, or abrasion to refresh her memory, the victim testified about a series of assaults. With respect to the charge of terrorizing, the victim testified that in September 2001 Durant pretended to commit suicide and then, when she became concerned, choked her to the point that she could not breathe and was "seeing stars." With regard to the charge of reckless conduct with the use of a dangerous weapon, the victim testified that in March 2002 Durant fired a gun through the second floor of their apartment, narrowly missing her on the floor below. Finally, with respect to the charge of criminal threatening with the use of a dangerous weapon, the victim testified that in June 2002 Durant held a loaded gun to her head and threatened to kill her.

[¶ 5] The defense countered that the victim was fabricating the allegations. For example, the defense called Durant's parents as witnesses. Durant's parents testified that the relationship between Durant and the victim was "good" and that neither of them had observed any signs of abuse.

[¶ 6] After the court recessed for the morning break on the first day of trial, it received a note from a juror indicating that, while she did not know the victim by name, she recognized her from a previous encounter. The juror wrote that, at the time of the encounter, the victim seemed like she was under "extreme stress" and was "almost frozen." As a result of this encounter, the juror stated that she was inclined to believe the victim's testimony and was not sure she could remain impartial.

[¶ 7] Before excusing the juror, the trial judge asked her if she had discussed her concerns with any of the other jurors. The juror replied that she had mentioned the encounter to another juror in an effort to obtain advice as to what she should do. The juror asserted, however, that none of the other jurors had heard her as far as she knew.

[¶ 8] After excusing the juror, the judge called the second juror—the one to whom the first had spoken—into her chambers. The judge asked the second juror what the first had told her. The second juror replied that the first had told her that she had seen the victim previously and that "she [had] thought she looked funny." The judge asked the second juror if she knew whether any other jurors had overheard their discussion, and the second juror said that she did not think so. The judge then asked the second juror if there was "anything about [her] interaction with [the first juror] that would affect [her] ability to continue to listen to the evidence and render a fair and impartial verdict?" The second juror responded "no," because she did not "actually know why [the first juror had] thought [the victim] looked funny." The judge instructed the second juror not to discuss the matter with any of the other jurors and sent her back to the jury room.

[¶ 9] After the second juror left the chambers, Durant's counsel expressed concern that, despite her assurances otherwise, the second juror might not be able to remain impartial. Durant's counsel explained that his theory of the case was that the victim was fabricating her accusations and that anything that would tend to indicate that she was under stress would tend to support the prosecution's case and her veracity. Durant's counsel noted that it would be "very hard for a juror to not have this type of information affect whether or not someone is more believable than another."

[¶ 10] The court decided to allow the second juror to remain on the jury, concluding, "I'm satisfied, just from looking at [the second juror] eyeball to eyeball, that this incident didn't have a big impact on her."

[¶ 11] The jury found Durant guilty on all but two of the counts alleged.[3] This appeal followed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

■ [¶ 12] Durant argues that the evidence was insufficient to support a conviction because the victim's testimony was not credible. Determinations regarding witness credibility are the exclusive province of the fact-finder. *State v. McCurdy,* 2002 ME 66, ¶ 10, 795 A.2d 84, 88. The jury found the victim's testimony to be credible; therefore, Durant's argument that the evidence was insufficient fails.

### B. Juror Impartiality

■ [¶ 13] Durant also asserts that he was denied a fair trial because of the potential that the second juror was biased against him as a result of her interaction with the first juror. Durant notes that the second juror not only became aware that the first juror had previously encountered the victim and had thought that she looked funny, but that the second juror was then left to speculate as to what the dismissal of the first juror meant. Durant contends that it is possible that this combination of events affected the second juror's assessment of the victim's credibility.

■ [¶ 14] Durant preserved this issue by making a timely objection. Durant's claim implicates his constitutional right to trial before an impartial jury. Accordingly, we will vacate the trial court's decision if there was an error that affected Durant's substantial rights or contributed to the verdict. *See State v. Burdick,* 2001 ME 143, ¶ 29, 782 A.2d 319, 328; *State v. Warren,* 1998 ME 136, ¶ 17, 711 A.2d 851, 857 (stating that the standard of review when an error in a criminal case affects constitutional rights is whether, upon review of the whole record, the Court is satisfied beyond a reasonable doubt that the error did not affect substantial rights or contribute to the verdict obtained).

■ [¶ 15] To address Durant's contention that he was denied a fair trial, it is necessary to examine the procedure that courts should follow when the impartiality of a juror is questioned. When the impartiality of a juror is questioned, a trial court should individually interview the juror to

---

**3.** Durant received a four-year sentence for the count of reckless conduct with the use of a dangerous weapon, all but two years suspended, with four years of probation; a four-year consecutive sentence for the count of criminal threatening with the use of a dangerous weapon, all suspended, with four years of proba-

tion; a ten-month sentence for the count of terrorizing, to be served concurrently with the reckless conduct sentence; and a ten-month sentence for thirteen counts of assault, to be served concurrently with the reckless conduct sentence.

determine whether he or she can remain impartial. *State v. Melanson,* 2002 ME 145, ¶ 11, 804 A.2d 394, 398. We accord substantial deference to the trial court's ultimate determination because of its unique ability to observe and assess the juror's credibility, and review a court's decision whether to retain a juror only to see if it exceeded the bounds of discretion. *Id.; State v. Prentiss,* 557 A.2d 619, 621 (Me.1989). A juror's assertion in response to the court's questioning that he or she can remain impartial is significant. *State v. DePhilippo,* 628 A.2d 1057, 1059 (Me. 1993).

[¶ 16] In this case, the court responded to the specter of juror bias in an exemplary manner. The trial judge individually interviewed the second juror in camera and carefully explored the nature of the second juror's conversation with the first juror. The judge specifically asked the second juror whether there was "anything about [her] interaction with [the first juror] that would affect [her] ability to continue to listen to the evidence and render a fair and impartial verdict?" The second juror responded that there was not. The judge later asked, "Do you feel any differently now about ... serving on this jury than you did ... when we picked the jury?" The second juror responded, "No. No." The judge then instructed the second juror not to discuss the matter with any of the other remaining jurors and to let the jury officer know if it became apparent that any of the other jurors were aware of the first juror's concerns.

[¶ 17] The in camera proceeding provided ample support for the judge's conclusion that the incident had not affected the second juror's ability to render a fair and impartial verdict. The court's decision to retain the second juror did not exceed the bounds of its discretion and thus was not made in error.

The entry is:

Judgment affirmed.