MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 131
Docket:      Cum-18-434
Argued:      June 12, 2019
Decided:     August 8, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

STATE OF MAINE

v.

KEVIN CAREY

SAUFLEY, C.J.

[¶1]  Kevin Carey appeals from a judgment of conviction entered by the court (Cumberland County, *L. Walker, J.*) after a jury found him guilty of multiple sex crimes.[1]  He argues that the court (*Cashman, J.*) erred in the jury selection process when it denied his motion to strike one of the jurors for cause and denied his motion to strike the entire venire after one prospective juror left the courtroom in an agitated state.  We affirm the judgment.

---

[1] Specifically, Carey was convicted of seven counts of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(C) (2018); two counts of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(B) (2018); three counts of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(A) (2018); one count of unlawful sexual contact (Class A), 17-A M.R.S. § 255-A(1)(F-1) (2018); one count of unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(F) (2018); and one count of visual sexual aggression against a child (Class C), 17-A M.R.S. § 256(1)(B) (2018).

## I.  BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the State, the jury rationally could have found the following facts beyond a reasonable doubt. *See State v. Ayotte*, 2019 ME 61, ¶ 2, 207 A.3d 614.  When Carey was more than thirty-five years old, he began to sexually assault a seven-year-old female relative who lived with him and other members of their family.  After his first assault, his conduct became more frequent and he would enter the child's bedroom every night, touch her genitals with his fingers, put his mouth on her genitals and make her put her mouth on his, and place objects in her vagina and anus.  He told her not to tell anyone because they would both be in trouble.

[¶3]  After the child moved to a different home with other family members to avoid him, Carey would visit that home to babysit one night each week.  During those visits, he would sexually assault the child.  He threatened to hurt her or other, younger children in her family if she told anyone.  When the child was about twelve years old, Carey moved into the house where the child was living.  Every day, he sexually assaulted the child.  He did not listen when she told him to stop.  Even after the child moved a second time to avoid Carey, Carey continued his sexual assaults against her on each of the three days each week that she would return to his residence to visit others in her family.

At age sixteen, the child told a friend and a family member what had been happening.[2]

[¶4] In March 2017, Carey was initially charged by complaint with seven counts of gross sexual assault, one count of unlawful sexual contact, one count of visual sexual aggression against a child, and one count of sexual misconduct with a child (Class C), 17-A M.R.S. § 258(1-A) (2018).  He was later charged by indictment with fifteen counts of gross sexual assault, two counts of unlawful sexual contact, one count of visual sexual aggression against a child, and one count of sexual misconduct with a child.

[¶5] Jury selection was held in September 2018.  At the beginning of jury selection, in front of the full pool of jurors, one prospective juror abruptly left the room when the charges against Carey were being described.  Although not everyone could hear it, the prospective juror said, as captured on the record,

---

[2] The evidence was sufficient to support the jury's findings that Carey engaged in the charged acts of physical contact between his mouth, or an instrument or device manipulated by him, and the genitals of the child, and between her mouth and his genitals, before the age of twelve, before the age of fourteen, and, regardless of age, through threats of physical force.  *See* 17-A M.R.S. §§ 251(1)(C), (E), 253(1) (2018) (gross sexual assault).  The evidence was also sufficient to demonstrate that, on all charged occasions, Carey, with the conscious object to do so, touched the child's genitals or anus for the purpose of arousing or gratifying sexual desire before she turned twelve and before she turned fourteen when he was not her spouse and was at least three years older than she was, *see* 17-A M.R.S. §§ 35(1)(A), 251(1)(D), 255-A(1)(F), (F-1) (2018) (unlawful sexual contact), and that he exposed his genitals to her and caused her to expose hers to him for the purpose of arousing or gratifying sexual desire when she was under the age of twelve and he was an adult, *see* 17-A M.R.S. § 256(1)(B) (visual sexual aggression against a child).

4

"No, I'm not staying for this." Defense counsel also heard the prospective juror say something like, "This is ridiculous." The court directed the judicial marshal to go after that prospective juror and ask him to stop.

[¶6] The court then took a short break, met with counsel, and upon return, asked the remaining pool of jurors, "Based on what just happened with the individual who left the courtroom, is there anyone, who, based on that act alone, would have any difficulty being fair and impartial going forward here today or through this case?" Thirty-four potential jurors answered in the affirmative. Based on the number of people who rose in response to the question, Carey moved at sidebar to strike the entire jury venire for this case. The court denied the motion to strike the entire venire but struck all members of the jury pool who had indicated that they would have difficulty being fair and impartial after witnessing the potential juror leave the courtroom.

[¶7] The court read the remaining charges and asked the remaining potential jurors if they knew any of the attorneys or listed witnesses, had heard of the matter in the media, had an inability to be fair and impartial as to law enforcement witnesses, believed that anyone charged with a crime must have done something wrong, had philosophical or religious beliefs that would make

it difficult to sit in judgment, or had any other reason that they could not be fair and impartial.

[¶8]  After receiving responses, the court held a conference with counsel during which Carey again moved for the entire pool to be stricken.  In support of that motion, he argued that the potential juror who left the courtroom had been sputtering negative words, that there were audible sighs and groans from other potential jurors when the charges were read, and that there seemed to be a pervasively negative view of Carey within the pool of jurors.  The court stated that it intended to "continue on and do the individual voir dire," but that it would also ask those jurors who would be questioned in individualized voir dire whether the events in court would affect their ability to be impartial.

[¶9]  The court then proceeded with individual voir dire of particular jurors, separate from the rest of the jury pool.  Relevant here, the court inquired why Juror 183 had answered "yes" to the question on the written sex questionnaire "involving knowledge of either [him]self, or a friend, or family member."  The juror indicated that a friend had been a victim of sexual abuse by a priest when he was a child.  Asked if there had been any type of prosecution, the juror stated, "I don't know the final outcome. . . . So I don't know.  I know he was . . . defrocked.  And then I don't honestly know what

happened." The court inquired further about those circumstances and about the effect of the in-court outburst on the potential juror:

> THE COURT: All right. And was there anything—is there anything about that incident and friend—did you and your friend talk about it?
>
> PROSPECTIVE JUROR: No, no. I kind of knew. We knew, we had heard things were happening, et cetera, but never spoke directly about it. I spoke with him after everything kind of came out. But he never talked about the situation.
>
> THE COURT: All right. Would anything about that—the knowledge of that event or what you believe happened, would that affect your ability to be fair and impartial in this case?
>
> PROSPECTIVE JUROR: I don't believe so.
>
> THE COURT: And is there anything that happened in the courtroom this afternoon, having had a little bit of time to reflect, has that had any effect on your ability to be fair and impartial?
>
> PROSPECTIVE JUROR: I don't believe so.
>
> THE COURT: Is there any question? You said, "I don't think so." Do you have any pause about that?
>
> PROSPECTIVE JUROR: No, it's—no. I would say "no." My answer would be "no." It's just, I guess, you're hard until you're in that situation to know for sure. But I would say most likely not.

Carey moved to strike the juror on the ground that he had been equivocal about his ability to remain fair and impartial. *See* M.R.U. Crim. P. 24(b) ("Challenges for cause of individual prospective jurors shall be made at the bench, at the

conclusion of the examination."). The court stated, "The fact patterns are very different. And he didn't have any direct conversations, he said, with that individual. It was more stuff that he had heard about or suspected. So I will deny [the motion]."

[¶10] After the court struck nine other jurors for cause, Carey renewed his motion to strike the entire venire. The court denied that motion finding that, after having spoken to the potential jurors in individual voir dire, it was confident that they had been candid in their responses to questions and could be fair and impartial. The State and Carey then exercised their peremptory strikes; Carey used all of his peremptory strikes but did not remove Juror 183.[3]

[¶11] The court (*L. Walker, J.*) held a jury trial beginning the next day. After the State presented its case, Carey moved for a judgment of acquittal on Counts 7, 9, 13, and 17—the charge of sexual misconduct with a child and three charges of gross sexual assault. The court granted that motion.

[¶12] The jury found Carey guilty of the remaining fifteen charges. After holding a sentencing hearing, the court sentenced Carey to concurrent forty-year sentences on seven of the gross sexual assault counts and imposed

---

[3] "As long as a defendant exercised all of his peremptory strikes . . . the fact that he did not use them to strike a juror that he challenged for cause does not defeat his right to complain on appeal as to the impaneling of those jurors." *State v. Holland*, 2009 ME 72, ¶ 55 n.15, 976 A.2d 227.

8

concurrent sentences on the other counts.[4]   Carey timely appealed.   *See*

15 M.R.S. § 2115 (2018); M.R. App. P. 2A, 2B(b)(1).

## II.  DISCUSSION

[¶13]  The United States Constitution guarantees the right of an accused

"to a speedy and public trial, by an *impartial* jury."   U.S. Const. amend. VI

(emphasis added); *see also* Me. Const. art. I, § 6 (guaranteeing the right to a

"speedy, public and *impartial* trial" (emphasis added)).  The Due Process Clause

also guarantees this right.  *See* U.S. Const. amend. XIV, § 1; *Morgan v. Illinois*, 504

U.S. 719, 727 (1992); *see also* Me. Const. art. I, § 6-A.

A.     Appellate Review of Determinations of Juror Impartiality

[¶14]  We "review the trial court's finding of juror impartiality for clear

error and the conduct of voir dire for an abuse of discretion."  *State v. Simons*,

2017 ME 180, ¶ 19, 169 A.3d 399 (quotation marks omitted).   A finding of

---

[4] Specifically, the court sentenced Carey to concurrent sentences of forty years for the gross sexual assaults charged in Counts 1, 2, 3, 4, 8, 10, and 11; thirty years for the gross sexual assaults charged in Counts 14, 15, 16, 18, and 19; thirty years for the unlawful sexual contact charged in Count 5; ten years for the unlawful sexual contact charged in Count 12; and five years for visual sexual aggression against a child, charged in Count 6.

impartiality will stand unless there is no competent evidence to support that decision. *State v. Diana*, 2014 ME 45, ¶ 22, 89 A.3d 132.

[¶15] We "accord substantial deference" to the trial court's ultimate finding about whether a juror can be fair and impartial "because of its unique ability to observe and assess the juror's credibility." *State v. Durant*, 2004 ME 136, ¶ 15, 861 A.2d 637; *see also Skilling v. United States*, 561 U.S. 358, 397-98 (2010) (stating that the trial court is in the best position to observe a potential juror's comprehension of the questions asked and the certainty of the juror's responses). The trial court's "predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record." *Wainwright v. Witt*, 469 U.S. 412, 429 (1985).[5]

[¶16] Because of the constitutional rights at stake, however, if we do discern an error that affects the right to an impartial adjudicator, that error cannot be regarded as harmless. *See Gray v. Mississippi*, 481 U.S. 648, 668 (1987); *United States v. French*, 904 F.3d 111, 119 (1st Cir. 2018)

---

[5] *See also Skilling v. United States*, 561 U.S. 358, 386 (2010) ("Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to capture fully in the record— among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty.").

(characterizing such error as "structural error—that is, per se prejudicial and not susceptible to harmlessness analysis").

B.    Trial Court Process—Ensuring the Impartiality of Individual Jurors

[¶17]  As a procedural matter, Maine's statute governing jury selection in criminal cases authorizes those accused of crimes to challenge jurors for cause "as in civil cases."  15 M.R.S. § 1259 (2018).  Thus, "[t]he court, on motion of either party in an action, may examine, on oath, any person called as a juror therein, whether he . . . has given or formed an opinion or is sensible of any bias, prejudice or particular interest in the cause."  14 M.R.S. § 1301 (2018).  "If it appears from his answers or from any competent evidence that he does not stand indifferent in the cause, another juror shall be called and placed in his stead." *Id.*

[¶18]  Criminal charges alleging sexual assaults on children present particular challenges in jury selection.  Judges, prosecutors, and defense counsel must help jurors distinguish between the natural and unavoidable abhorrence of those types of assaults and the very different issue of each juror's capacity to determine whether the defendant committed the crimes charged.  Although the court must be alert to the sort of animus that would undermine a juror's ability to presume the particular defendant's innocence, a juror's

consideration of sexual assault on a child to be repulsive does not alone require the court to strike the juror for cause. Sexual assaults are designated as crimes for the very reason that society condemns such behavior.

[¶19] If the impartiality of a potential juror has been brought into question, a trial court should interview the prospective juror "to determine whether he or she can remain impartial." *Durant*, 2004 ME 136, ¶ 15, 861 A.2d 637. The questions that a court chooses to ask during voir dire must be sufficient to elicit any facts that would reveal juror bias so that the court can make an informed decision. *State v. Lowry*, 2003 ME 38, ¶ 11, 819 A.2d 331. There is, however, no "hard-and-fast formula" that dictates exactly what questions the individual voir dire must include. *Skilling*, 561 U.S. at 386. The trial court has "[c]onsiderable discretion over the conduct and scope of juror voir dire" and must balance "the competing considerations of fairness to the defendant, judicial economy, and avoidance of embarrassment to potential jurors." *State v. Woodburn*, 559 A.2d 343, 344 (Me. 1989).

[¶20] Because jurors, in responding to voir dire questions, "cannot be expected invariably to express themselves carefully or even consistently," *Skilling*, 561 U.S. at 397 (quotation marks omitted), the observations of the trial court and input from counsel at the point of the individual voir dire are of great

importance. Colloquial uses of phrases such as "I think" or "I hope" must be understood by the trial court in context. For instance, a court may determine that there is no actual bias when a juror, in the course of the voir dire, says, "I think I could be fair"; the court is not required to find that statement, taken alone, to represent equivocation. *Miller v. Webb*, 385 F.3d 666, 675 (6th Cir. 2004) (quotation marks omitted). The trial court may also weigh most heavily "those statements that were the most fully articulated" by the juror during voir dire. *Patton v. Yount*, 467 U.S. 1025, 1039 (1984).

[¶21] If a potential juror overhears the improper comments of a fellow prospective juror, "the test for juror impartiality is whether a juror can lay aside any impressions from the improper comment and render a verdict based only on the evidence presented during the trial." Alexander, *Maine Jury Instruction Manual* § 2-7 at 2-34 (2018-2019 ed. 2018) (citing *United States v. Lacey*, 86 F.3d 956, 969 (10th Cir. 1996)). If a juror is exposed to information that could affect the juror's impartiality, the court may still seat the juror if the juror, upon court inquiry, credibly states that the information would not affect the juror's ability to be impartial. *Durant*, 2004 ME 136, ¶¶ 16-17, 861 A.2d 637. Similarly, a court may find it appropriate to seat a juror who, when asked if the juror could set aside an opinion regarding guilt before entering the jury box, says, "I think

I could enter it [the jury box] with a very open mind. I think I could . . . very easily." *Patton*, 467 U.S. at 1039-40 (alterations in original) (quotation marks omitted). And when a juror indicates that she "believe[s]" she can be impartial, the trial court may find that the juror can be impartial. *United States v. Alexander*, 48 F.3d 1477, 1484 (9th Cir. 1995) (quotation marks omitted).

[¶22] It is against this backdrop that we review the jury selection process, and the ultimate seating of the jury, in the matter before us.

C. Review of Jury Selection in Carey's Case

1. Individual Voir Dire, Juror 183

[¶23] In speaking with Juror 183, the court here (*Cashman, J.*) did exactly what a trial court should do when a juror's impartiality has been questioned; it posed questions to the potential juror individually that were designed to aid the court in evaluating whether the juror could be fair and impartial notwithstanding the sexual abuse of his childhood friend and his observation of the potential juror's conduct in leaving the courtroom. *See Durant*, 2004 ME 136, ¶¶ 15-17, 861 A.2d 637. When asked if either his friend's experience of sexual abuse or the events he witnessed in the courtroom would affect his ability to be impartial, the juror stated, "I don't believe so." The court carefully followed up by questioning whether he had any pause. The juror then made his

response clear: "No, it's—no. I would say 'no.' My answer would be 'no.'" The juror added, "It's just, I guess, you're hard until you're in that situation to know for sure. But I would say most likely not." The court concluded that those final ruminations did not undermine its determination of the juror's impartiality.

[¶24] The court acted in its proper role when it interpreted the juror's repeated "no" answers as genuinely communicating a belief that neither his life experiences nor the events he observed in court would affect his ability to be fair and impartial. Based on its observation of the potential juror and consideration of his words and the way in which he delivered them, the court's reliance on the juror's "most fully articulated" statements provided a solid foundation for its determination that Juror 183 could be impartial. *Patton*, 467 U.S. at 1039. We defer to the court's finding following its individualized inquiry, *see Durant*, 2004 ME 136, ¶ 15, 861 A.2d 637, and we discern no error in the court's decision.

2.    Denial of Motion to Strike the Entire Jury Pool

[¶25] Carey also contends that the entire jury pool should have been stricken because the pool was impliedly biased against him after the outburst that the potential jurors witnessed in court. "Whether a juror's partiality may be presumed from the circumstances is a question of law" that calls for a

determination of whether the circumstances at hand are "extraordinary" such that bias or prejudice will be implied or presumed. *Hunley v. Godinez*, 975 F.2d 316, 318-19 (7th Cir. 1992). The inquiry is an objective one that asks whether "it is highly unlikely that the average person could remain impartial in . . . deliberations under the circumstances." *United States v. Kechedzian*, 902 F.3d 1023, 1027-28 (9th Cir. 2018) (quotation marks omitted).

[¶26] Although we have not had occasion to address the issue, federal jurisprudence has made clear that bias can be implied or prejudice presumed only in extreme or extraordinary circumstances. *See Hunley*, 975 F.2d at 318 ("Use of the 'implied bias' doctrine is certainly the rare exception."). For instance, bias was implied when jurors' hotel rooms were burglarized overnight while the jurors were sequestered for a trial involving a burglary and murder, and there was some indication that jurors who had been victimized changed their votes to guilty. *Id.* at 317, 320. In another case, bias was implied when jurors listened to sixty-five percent of the potential jurors indicate that they thought the defendant was guilty of murder and state that they could not be fair and impartial. *Seals v. State*, 44 So. 2d 61, 67-68 (Miss. 1950).

[¶27] The circumstances of this case do not in any way present an extraordinary situation in which prejudice may be presumed or bias implied.

The departing potential juror did not speak about the defendant or the defendant's guilt; he said only, "No, I'm not staying for this," and, "This is ridiculous." We cannot conclude, as a matter of law, that it would be highly unlikely that members of the jury pool could be fair and impartial after observing one juror's reaction to charges of child sexual assault.[6] *See Kechedzian*, 902 F.3d at 1027-28.

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant Kevin Carey

Jonathan Sahrbeck, District Attorney, and Nicole M. Albert, Asst. Dist. Atty. (orally), Prosecutorial District No. Two, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2017-1609
FOR CLERK REFERENCE ONLY

---

[6] Although it was possible that some potential jurors had identified, in the court's question, an expedited method for avoiding jury service, the court here made no such finding, and we do not discuss that issue. *See, e.g., Gray v. Mississippi*, 481 U.S. 648, 652-53, 656 (1987).