MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2022 ME 32
Docket:        And-21-288
Argued:        May 10, 2022
Decided:       June 14, 2022

Panel:         MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.*

# STATE OF MAINE

v.

# HILLARY HEMMINGER

HORTON, J.

[¶1]  Hillary Hemminger appeals from a judgment of conviction for operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(A) (2022), entered in the trial court (Androscoggin County, *Stewart, J.*) after a jury trial. Hemminger contends that (1) the court erred in denying her challenge for cause to a prospective juror based on implied bias and (2) the court violated her constitutional rights by taking into account in its sentence what the court deemed her untruthful trial testimony without first making independent perjury findings.  We disagree with both arguments and affirm.

---

  *  Although Justice Humphrey participated in the appeal, he retired before this opinion was certified.

## I.  BACKGROUND

[¶2]  "Viewing the evidence in the light most favorable to the jury's verdict, the trial record supports the following facts." *State v. Murray*, 2021 ME 47, ¶ 2, 259 A.3d 1276.  Sometime in the early evening on April 7, 2020, the vehicle that Hillary Hemminger was driving veered off the road and into a ditch in Livermore Falls.  An officer responded to a bystander's call reporting the accident at around 6:30 p.m.  Video from the officer's body camera showed Hemminger to be visibly unsteady on her feet and slurring her speech.  In response to the officer's questions, Hemminger said that she had consumed two alcoholic beverages between 12:00 and 1:30 p.m. and did not mention any subsequent consumption of alcohol.  After administering a roadside test to detect impairment, the officer concluded that Hemminger was impaired and placed her under arrest.  The officer brought Hemminger to the police station to administer an Intoxilyzer test of her breath alcohol level, which yielded a result of .21 grams of alcohol per 210 liters of breath.  The State charged Hemminger by complaint[1] with operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(A).

---

[1]  The docket record indicates that the complaint was filed on May 6, 2020, but the complaint itself is dated June 30, 2020, and it is not date-stamped.

[¶3]  During jury selection on August 5, 2021, the court had the following exchange with one of the randomly selected jurors:

THE COURT:    One of the questions asked whether you or anyone in your family has been a victim of an accident involving a drunk driver.  You said yes.

THE JUROR:    Yes, my father.

THE COURT:    He was a victim in that?

THE JUROR:    He was.

THE COURT:    How long ago?

THE JUROR:    It's going to be 15 years ago.

THE COURT:    What happened to him?

THE JUROR:    He was in [L]owell, Mass., and a young woman [who] had her grandmother's car hit him in the back end[.]

THE COURT:    Was he injured?

THE JUROR:    He was.  He went to the -- hit his head, hit the glass.

THE COURT:    Did he recover?

THE JUROR:    He died of CTE complication[s].  I think he recovered.  It's hard to know.  I don't mean to be vague, it's just --

THE COURT:    Those experiences of you knowing what happened to your father and the effect that

would have had on the entire family, would that make it difficult for you to sit on an OUI case?

THE JUROR:     It would not.

THE COURT:     You think you'd be able to be fair and impartial particularly --

THE JUROR:     I do.

THE COURT:     -- to the defendant in this case?

THE JUROR:     Yes, sir.

THE COURT:     And you don't think that in that case with your dad -- was the driver charged?

THE JUROR:     Yes.

THE COURT:     Convicted?

THE JUROR:     I don't know.  I wasn't aware.

THE COURT:     Do you think ultimately you'd be able to base your verdict if you were to sit on this case only upon the evidence of this case and the instructions given by the Court?

THE JUROR:     I do.

THE COURT:     Wouldn't be influenced by those personal experiences?

THE JUROR:     No, sir.

Hemminger challenged the juror for cause, but the court denied the challenge,

stating that the "[o]nly parallel I see is [that the driver in the accident the juror

described was] a woman." Hemminger did not use a peremptory challenge to exclude the juror, and the juror was empaneled.

[¶4] The court held a one-day jury trial on August 18, 2021. The State presented testimony from multiple witnesses and entered in evidence the responding officer's body camera footage and the Intoxilyzer results. Hemminger testified that on April 7, 2020, she had two alcoholic beverages at a friend's house at around 12:30 p.m. and that she left at around 3:00 p.m. to go to the grocery store, where she purchased coffee brandy. She testified that she left the grocery store at around 3:30 or 3:45 p.m. to drive home but that, during the drive, the car slid on debris on the road and swerved into a ditch. She testified that, from about 4:00 until 6:00 p.m., no cars drove by and that she called fifteen or twenty people for help. Hemminger testified that the accident caused severe pain in her back and that, during the time between the accident and when the police arrived, she consumed approximately thirty-six ounces of coffee brandy to ease the pain. She further testified that she hid the bottle under the seat before the officer arrived because she did not think that he would believe that she had been drinking after the accident.

[¶5] The jury found Hemminger guilty of operating under the influence and of having a blood-alcohol level of .15 grams or more per 210 liters of breath

at the time of the offense.  *See* 29-A M.R.S. § 2411(1-A)(A), (5)(A)(3)(a)(i).  The

court sentenced Hemminger immediately after the trial and weighed the

mitigating and aggravating factors:

> So if we were talking about . . . operating under the influence,
> it was in the allegation of a high test, which this one is, we would be
> talking about a case that would probably in the normal realm be a
> 48 hours, which is a mandatory minimum, up to seven days.  That
> would be the normal range for a case such as this . . . . Single-vehicle
> accident with a[n] extremely high test of a .21.  So I would say . . .
> 48 hours, could be as high as seven days . . . .
>
> So if we were to put this in the range of two to seven days,
> now we're going to look at some things that are more particular to
> you. . . . What I quickly identify as the mitigating factors are there's
> no criminal history and there's no driving history. . . . And you are
> a young mother with some responsibilities there.  And you're also
> now . . . having some financial difficulties as well as physical
> difficulties.  So those would be mitigating factors.  And also that you
> previously were employed, et cetera.
>
> . . . .
>
> Now, what there are for aggravating factors are not just -- not
> taking responsibility, but not being truthful . . . in court.  Everyone
> has a right to trial.  Everyone is presumed innocent.  Everyone has
> a right to come into court and make the State prove their case. . . .
> [S]o it is not an aggravating factor to have a trial. . . .
>
> But I heard the evidence, compared it against the balance, the
> overwhelming evidence of . . . what otherwise the State put on.  But
> more importantly, the jury heard the evidence, also.  And I don't
> have it down to the minute on how long they deliberated, but just
> for whatever it's worth.  And they didn't deliberate very long.  So
> they discredited that testimony quite quickly.  And so . . . it is of

concern that we have someone that came into court that testified untruthfully.

After the court's remarks, Hemminger challenged the court's characterization of her testimony, although she did not ask the court to make independent perjury findings. The court sentenced Hemminger to a four-day period of incarceration, imposed a $500 fine, and suspended her license for 150 days. Hemminger timely appealed. *See* 15 M.R.S. § 2115 (2022); M.R. App. P. 2B(b)(1).

## II. DISCUSSION

### A. Implied Juror Bias

[¶6] Hemminger argues[2] that the court erred in denying her challenge to strike for cause a juror whose father was injured by a drunk driver because the juror was impliedly biased[3] as a matter of law. "Whether a juror's partiality

---

[2] Hemminger's brief does not expressly rest her argument on any particular constitutional provision. We presume, however, based on the invocation of the Sixth and Fourteenth Amendments in her reply brief and our discussion in *State v. Carey*, 2019 ME 131, ¶ 13, 214 A.3d 488, that the argument rests on the right to an impartial jury guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

[3] Implied bias is distinct from implicit bias and actual bias, although jury selection can involve identifying all three forms of bias.

"Implicit biases, [unlike explicit biases], are unstated and unrecognized and operate outside of conscious awareness. Social scientists refer to them as hidden, cognitive, or automatic biases, but they are nonetheless pervasive and powerful. Unfortunately, they are also much more difficult to ascertain, measure, and study than explicit biases." Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 152 (2010); *see* Ill. Pattern Jury Instr., No. 1.08, cmt. (May 2018) ("The literature on implicit bias explains that everyone has implicit biases. This

8

may be presumed from the circumstances is a question of law," *State v. Carey*, 2019 ME 131, ¶ 25, 214 A.3d 488 (quotation marks omitted), and we review questions of law de novo, *Medeika v. Watts*, 2008 ME 163, ¶ 5, 957 A.2d 980.

[¶7] We discussed the doctrine of implied juror bias for the first time in *State v. Carey*, 2019 ME 131, ¶¶ 25-26, 214 A.3d 488. There, we explained that, in determining whether a juror's bias may be implied, the inquiry is an objective one focusing on whether an average person in the position of the challenged juror "could remain impartial in deliberations under the circumstances." *Id.* ¶ 25 (alterations and quotation marks omitted). "[B]ias can be implied . . . only in extreme or extraordinary circumstances." *Id.* ¶ 26. In *Carey*, when the charges against the defendant were described during jury selection, one prospective juror stated, clearly enough that other jurors could have heard,

---

means that judges and jurors are not immune. . . . It is particularly important for judges and jurors, who strive to be impartial decision-makers, to be aware of this phenomenon and to try to guard against it for purposes of the trial.").

Implied bias, on the other hand, involves unusual or extreme situations in which the law presumes that a juror should be disqualified from service because of the likelihood that the average person in the juror's position would be unable to serve impartially as a juror in the case: "Unlike the inquiry for actual bias, in which we examine the juror's answers on voir dire for evidence that she was in fact partial, the issue for implied bias is whether *an average person in the position of the juror in controversy* would be prejudiced." *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000) (quotation marks omitted). Some state statutes define situations in which a juror is disqualified based on implied bias, *see, e.g.*, Wash. Rev. Code § 4.44.180 (2022) (implied bias defined in four different forms), although Maine has no such statute.

Hemminger's argument is limited to implied bias; she does not contend that the juror was actually biased or implicitly biased. Because Hemminger does not argue actual or implicit bias on appeal, we do not consider them further. *See Moyant v. Petit*, 2021 ME 13, ¶ 7 n.4, 247 A.3d 326.

"No, I'm not staying for this" and "[t]his is ridiculous" and abruptly left the room. *Id.* ¶ 5. We concluded that the remaining jurors were not impliedly biased because we "[could] not conclude, as a matter of law, that it would be highly unlikely that members of the jury pool could be fair and impartial after observing one juror's [outburst]." *Id.* ¶ 27.

[¶8] Because *Carey* is the only case in which we have addressed implied juror bias and the circumstances were distinguishable from those here, federal jurisprudence[4] is instructive.[5] Consistent with our precedent in *Carey*, federal courts apply the doctrine only in extreme or extraordinary circumstances. *See, e.g.*, *United States v. Kechedzian*, 902 F.3d 1023, 1027-28 (9th Cir. 2018); *Hunley v. Godinez*, 975 F.2d 316, 319 (7th Cir. 1992); *Gonzales v. Thomas*, 99 F.3d 978, 987 (10th Cir. 1996). Courts have sometimes concluded that a juror is impliedly biased "where a juror or his close relatives have been

---

[4]  Hemminger's appeal regarding implied bias raises no independent argument specific to the Maine Constitution. *See State v. Chan*, 2020 ME 91, ¶ 18 n.10, 236 A.3d 471.

[5]  Although the United States Supreme Court has never explicitly applied the implied bias doctrine, it has been invoked in concurring and dissenting opinions. *See Smith v. Phillips*, 455 U.S. 209, 222-23 (1982) (O'Connor, J., concurring) (noting that "[n]one of [the Supreme Court's] previous cases preclude the use of the conclusive presumption of implied bias in appropriate circumstances" and that some examples of implied bias "might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction"); *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 558 (1984) (Brennan, J., dissenting) ("Because the bias of a juror will rarely be admitted by the juror himself, . . . it necessarily must be inferred from surrounding facts and circumstances.").

personally involved in a situation involving a similar fact pattern." *Tinsley v. Borg*, 895 F.2d 520, 528 (9th Cir. 1990); *see United States v. Gonzalez*, 214 F.3d 1109, 1112-13 (9th Cir. 2000); *Jackson v. United States*, 395 F.2d 615, 618 (D.C. Cir. 1968). Courts have also considered whether the juror disclosed the information about the similar experience during jury selection. *See, e.g.*, *Dyer v. Calderon*, 151 F.3d 970, 983 (9th Cir. 1998) ("[W]e presume bias where a juror lies in order to secure a seat on a jury."); *Kechedzian*, 902 F.3d at 1027-28 ("This Court has found implied bias in those extreme situations . . . where repeated lies in voir dire imply that the juror concealed material facts in order to secure a spot on the particular jury." (citations and quotation marks omitted)); *cf. Gonzales v. Thomas*, 99 F.3d at 989 ("Though a juror's dishonesty in voir dire may be considered in an implied bias inquiry, it is not necessary to an implied bias finding.").

[¶9] For example, in *United States v. Eubanks*, the Ninth Circuit concluded that a juror was impliedly biased where the charges involved heroin because his sons were currently incarcerated for crimes related to heroin use, information that he did not disclose during jury selection. 591 F.2d 513, 516-17 (9th Cir. 1979). Likewise, in *Jackson v. United States*, the D.C. Circuit concluded that a juror was impliedly biased where the juror was allegedly involved in a

love triangle remarkably similar to the one at issue in the case. 395 F.2d at 616-18. The Seventh Circuit also applied the doctrine in *Hunley v. Godinez*, concluding that jurors in a burglary case were impliedly biased because, during sequestration, their hotel had been burglarized in a manner similar to that alleged in the defendant's case. 975 F.2d at 317-20.

[¶10] Conversely, the Ninth Circuit declined to apply the implied bias doctrine in an identity-theft case where a juror had previously been a victim of identity theft but had fully disclosed the experience during voir dire. *Kechedzian*, 902 F.3d at 1025, 1028. The Tenth Circuit also held that a juror who had been a victim of rape under circumstances similar to the facts of the case was not impliedly biased because the experience did not have "a detrimental life-changing impact on [the juror's] life" and occurred twenty-five years before the trial. *Gonzales v. Thomas*, 99 F.3d at 990-91.

[¶11] We conclude that the juror here was not impliedly biased because the circumstances were not so "extreme or extraordinary" as to make it unlikely that the average person in the position of the juror could serve impartially. *See Carey*, 2019 ME 131, ¶ 26, 214 A.3d 488. The juror's father was injured fifteen years earlier in an accident involving a female drunk driver. Although a particular person might remain so affected by such circumstances as to be

unable to serve impartially, others might not, so we cannot say that "it is highly unlikely that the average person could remain impartial" under these circumstances. *Id.* ¶ 25 (quotation marks omitted). As the trial court explained, the only parallel between the juror's experience and Hemminger's case is that the intoxicated driver was a woman in both instances.

[¶12] Hemminger does not point to any judicial determination of implied bias where, as here, the victim of the prior criminal event was the juror's family member rather than the juror himself, the event occurred many years ago, the juror forthrightly disclosed that information to the court, and the juror repeatedly affirmed his ability to serve impartially. Further, Hemminger ignores the cases in which courts have concluded that a juror was not impliedly biased under circumstances that were seemingly more extreme than those here. *See Gonzales v. Thomas*, 99 F.3d at 987-91; *Kechedzian*, 902 F.3d at 1028.

[¶13] For these reasons, we conclude that the court did not err in denying Hemminger's challenge to the juror for cause.

## B. Constitutionality of the Sentence

[¶14] Although we generally do not review sentences on direct appeal, such review is allowed "when a defendant asserts that his sentence is illegal and the illegality is apparent on the record." *State v. Grindle*, 2008 ME 38, ¶ 13,

942 A.2d 673. "On direct appeal, we review only the legality, not the propriety, of a sentence," *id.* (quotation marks omitted), and our review is de novo, *see Portland Reg'l Chamber of Com. v. City of Portland*, 2021 ME 34, ¶ 7, 253 A.3d 586.

[¶15]  Hemminger contends that the court violated her rights under the Sixth and Fourteenth Amendments[6] by increasing her sentence based on its belief that she testified untruthfully without first making perjury findings.  She argues that, under *United States v. Dunnigan*, 507 U.S. 87 (1993), a court is constitutionally required to make independent perjury findings before increasing a sentence based on a belief that a defendant testified untruthfully at trial.[7]  Because we disagree with Hemminger's interpretation of *Dunnigan*, we affirm the sentence.

---

[6]  In her brief, Hemminger does not identify the precise constitutional protections on which she rests her argument.  Based on her reply brief and her statements at oral argument, however, we presume that her invocation of the Fourteenth Amendment refers to the right to due process and the right to testify on one's own behalf.  *See United States v. Dunnigan*, 507 U.S. 87, 96 (1993).  We presume that her invocation of the Sixth Amendment, as was the case in *State v. Grindle*, refers to the right to trial by jury.  2008 ME 38, ¶ 1, 942 A.2d 673.

Our analysis of the constitutionality of the sentence rests on the United States Constitution, instead of the Maine Constitution, because Hemminger's argument does not rely on the Maine Constitution.  Although a footnote in her reply brief asserts that Maine's constitutional right to testify might be more expansive than the right to testify that is implicit in the United States Constitution, we decline to address that argument because it is both undeveloped, *see Mehlhorn v. Derby*, 2006 ME 110, ¶ 11, 905 A.2d 290, and unpreserved because Hemminger mentions it for the first time in her reply brief, *see Lincoln v. Burbank*, 2016 ME 138, ¶ 41, 147 A.3d 1165.

[7]  To the extent that Hemminger challenges the basis for the court's view that she testified untruthfully, rather than the absence of independent findings to justify that view, that claim is not

14

[¶16]  The United States Supreme Court first addressed this question in *United States v. Grayson*, 438 U.S. 41 (1978).  There, the sentencing court indicated that its view of the defendant's trial testimony as a "complete fabrication" would be a consideration in the sentence.  *Id.* at 44.  The defendant argued that the trial court's action violated his constitutional rights both to testify and to due process, but the Court rejected both arguments and upheld the sentence.  *Id.* at 53-54.  The Court noted that the right to testify does not include the right to testify untruthfully and that it is necessary for a sentencing court "to consider the defendant's whole person and personality, as manifested by his conduct at trial and his testimony under oath."  *Id.*

[¶17]  In *Dunnigan*, decided fifteen years after *Grayson*, the Court revisited the issue but under different circumstances.  507 U.S. at 88-89.  Then, the Court framed the question as whether "the Constitution permits a court to enhance a defendant's sentence [as required by the federal sentencing guidelines], if the court finds the defendant committed perjury at trial" and concluded that it did.  *Id.*  However, in clarifying the sentencing guideline at issue, the Court explained that "if a defendant objects to a sentence

---

reviewable on direct appeal, where our review is limited to the legality of the sentence rather than its propriety.  *Grindle*, 2008 ME 38, ¶ 13, 942 A.2d 673.

enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish" all of the elements of perjury. *Id.* at 95. Further, it addressed the defendant's concern that the enhancement undermined her right to testify:

> The concern that courts will enhance sentences as a matter of course whenever the accused takes the stand and is found guilty is dispelled by our . . . explanation that if an accused challenges the sentence increase based on perjured testimony, the trial court must make findings to support all the elements of a perjury violation in the specific case. And as to the risk of incorrect findings of perjury by district courts, that risk is inherent in a system which insists on the value of testimony under oath. To uphold the integrity of our trial system, we have said that the constitutionality of perjury statutes is unquestioned.

*Id.* at 96-97.

[¶18] We first considered whether the trial court's view that a defendant gave false testimony may be a factor in sentencing in *State v. Plante*, 417 A.2d 991 (Me. 1980), a case decided after *Grayson* and before *Dunnigan*. In that case, the sentencing court stated that it increased the defendant's sentence based on its belief that the defendant had testified untruthfully. *Plante*, 417 A.2d at 994-95. The defendant argued that the court deprived him of the due process right to be tried and convicted before being sentenced for perjury. *Id.* at 995. Relying on *Grayson*, we concluded that a sentencing court is

permitted to consider that the defendant has testified untruthfully in imposing a sentence. *Plante*, 417 A.2d at 995-96.

[¶19] We addressed this issue again after the Supreme Court's decision in *Dunnigan* in *State v. Grindle*, 2008 ME 38, 942 A.2d 673, and we reaffirmed our conclusion in *Plante*. During sentencing, the court considered the defendant's trial testimony as an aggravating factor, stating that "[the defendant] chose to testify in an exculpatory way [but that] [t]he jury rejected that testimony . . . ." *Grindle*, 2008 ME 38, ¶ 10, 942 A.2d 673. In rejecting the defendant's contention that the court violated his constitutional right to testify, we emphasized that, "[w]hile a criminal defendant has a right to trial, and a right to testify at that trial, a defendant does not have a right to testify falsely without risk of sanction." *Id.* ¶ 17. We explained,

> Courts have broad discretion in determining what information to consider in sentencing; they are limited only by the due process requirement that such information must be factually reliable and relevant.
>
> There is a difference between increasing a defendant's sentence because the defendant chooses to exercise the right to trial and to testify, and considering a defendant's conduct at trial and information learned at trial, along with other factors, in determining the genuineness of a defendant's claim of personal reform and contrition. . . .
>
> . . . .

Here, the sentencing court did state, explicitly, that it considered Grindle's "exculpatory testimony," which the court suggested was untruthful, to be an aggravating factor, because it demonstrated his unwillingness to accept responsibility for his actions and his lack of remorse. Such a consideration is permissible to support our goal that the court properly individualize the sentence, considering all aggravating and mitigating factors regarding the offender and the offense.

*Id.* ¶¶ 18-19, 26 (citations and quotation marks omitted). We did not impose a requirement that courts make independent perjury findings before increasing a sentence based on untruthful testimony.[8]

[¶20] However, the defendant in *Grindle* did not make the argument that Hemminger makes here—that *Dunnigan* allows a trial court's view that the defendant has given false trial testimony to be a factor in sentencing only if the trial court has first made findings on the record that the defendant's testimony constituted perjury. *See Grindle*, 2008 ME 38, 942 A.2d 673. Hemminger contends that *Grindle* was incorrectly decided because *Dunnigan* articulates a constitutional requirement that a court must make independent perjury findings when it increases a sentence based on its belief that a defendant has testified untruthfully. We conclude, however, that *Dunnigan*'s requirement for

---

[8] In fact, we mentioned *Dunnigan* only to support the proposition that "a criminal defendant's sentence may be enhanced when the trial court finds that the defendant perjured himself at trial." *Grindle*, 2008 ME 38, ¶ 17, 942 A.2d 673.

perjury findings is based on the federal sentencing guidelines rather than on the United States Constitution, and it is thus not binding upon state courts, where the federal sentencing guidelines do not apply. *See Cobb v. State*, 843 S.E.2d 912, 916 (Ga. Ct. App. 2020) (concluding that "*Dunnigan* is inapposite because the federal court there was required, under federal sentencing guidelines, to make specific findings of fact before it could enhance a defendant's sentence based on his untruthful testimony at trial").

[¶21] Hemminger cites several decisions that she says support her interpretation of *Dunnigan*, but we are unpersuaded. Some are distinguishable on their facts. *See, e.g.*, *People v. Wechsler*, 854 P.2d 217, 218, 222 n.3 (Colo. 1993) (bar disciplinary matter); *State v. Smart*, 995 P.2d 407, 412 (Kan. Ct. App. 1999) (enhancement of sentence governed by state statutory guidelines comparable to the federal guidelines); *People v. Armstrong*, 743 N.E.2d 215, 224-25 (Ill. App. Ct. 2000) (sentence enhancement based on "wanton cruelty" rather than untruthful trial testimony); *People v. Baiz*, 2007 Mich. App. LEXIS 34, at *2-7 (Mich. Ct. App Jan. 9, 2007) (sentence enhancement governed by state statutory sentencing guidelines); *State v. Westlund*, 2012 Minn. App. Unpub. LEXIS 786, at *13-14 (Minn. Ct. App. Aug. 20, 2012) (sentence not increased); *Fuller v. State*, 860 A.2d 324, 333 (Del. 2004)

(sentence enhanced based on false testimony of a witness other than the defendant). And contrary to Hemminger's contention, many of the cases she cites do not indicate whether the conclusion that findings are required rests on the Constitution or on applicable state sentencing guidelines or standards. *See Armstrong*, 743 N.E.2d at 225; *Westlund*, 2012 Minn. App. Unpub. LEXIS 786, at \*13; *Wechsler*, 854 P.2d at 222 n.3; *Baiz*, 2007 Mich. App. LEXIS, at \*6-7.

[¶22]   We read *Dunnigan* to indicate that the requirement for independent perjury findings is based on the rights conferred by the federal sentencing guidelines. *Dunnigan*, 507 U.S. at 95-97. In articulating the requirement that a sentencing court make perjury findings before enhancing a sentence based on a defendant's false trial testimony, the Court refers only to federal trial courts and cites only the federal sentencing guidelines, a federal rule of criminal procedure, and a United States Supreme Court case addressing those rules and guidelines.[9] *Id.* at 95. Although the Court acknowledged that the guidelines' requirement for findings protects against the risk that a trial court will "enhance sentences as a matter of course whenever the accused takes

---

[9] The Court's exact phrasing of its conclusion, with all citations, reads: "For these reasons, if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice, or an attempt to do the same, under the perjury definition we have set out. *See* USSG § 6A1.3 (Nov. 1989); Fed. Rule Crim. Proc. 32(c)(3)(D). *See also Burns v. United States*, 501 U.S. 129, 134 (1991)." *Dunnigan*, 507 U.S. at 95.

20

the stand and is found guilty," it did not state that such findings were required by the Constitution independent of the guidelines. *Id.* at 96.

[¶23]  Moreover, there is no mention of any requirement for perjury findings in *Grayson*, which was decided before the implementation of the federal sentencing guidelines.[10]  *See Grayson*, 438 U.S. at 44; U.S. Sent'g Guidelines Manual ch. 1, pt. A, introductory cmt. (U.S. Sent'g Comm'n 1987).  If the requirement that a trial court make perjury findings before considering a defendant's untruthful testimony in sentencing had a constitutional basis, the Court would have said so in *Grayson*.

[¶24]  Based on that interpretation of *Grayson* and *Dunnigan*, we conclude that the court committed no error in failing to make independent perjury findings because such findings are not required, constitutionally or otherwise.[11]

---

[10]  In imposing the sentence upheld in *Grayson*, the trial court made no perjury findings and stated only that "it is my view that your defense was a complete fabrication without the slightest merit whatsoever.  I feel it is proper for me to consider that fact in the sentencing, and I will do so." *United States v. Grayson*, 438 U.S. 41, 44 (1978) (emphasis omitted).

[11]  A court's view that a defendant has testified untruthfully should rest on the court's own assessment of the testimony rather than on the length of the jury's deliberations because the latter may be open to multiple interpretations.  Here, although the court did refer to the length of the jury's deliberations in explaining its reasoning, it was plainly guided by its own impression: "I heard the evidence, compared it against the balance, the overwhelming evidence of . . . what otherwise the State put on."

## C.    Conclusion

[¶25]  Because we reject Hemminger's contentions that the court erred in denying her challenge to a juror for cause based on implied bias and that the court violated her constitutional rights by factoring into the sentence its view that her testimony was untruthful without making perjury findings, we affirm the judgment.

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Hillary Hemminger

Andrew S. Robinson, District Attorney, and Patricia A. Mador, Asst. Dist. Atty. (orally), Office of the District Attorney, Lewiston, for appellee State of Maine

Androscoggin County Unified Criminal Docket docket number CR-2020-906
FOR CLERK REFERENCE ONLY